# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS
# AT WICHITA

| | |
|---|---|
| ROBERT BLAUROCK, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 6:22-cv-1196 |
| SOUTHWIND SURGICAL GROUP, BRANDON S. CUNNINGHAM, M.D., ALAINA D. DRESSLER, P.A., BARD DAVOL INC., CORIZON LLC., CORIZON INC., CENTURION HEALTH CARE PROVIDER/K.D.O.C., | ) Removed from the District Court of Butler County, Kansas<br>) Case No. BU-2022-CV-000173<br>) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant C. R. Bard, Inc., erroneously sued as Bard Davol Inc., ("Bard") hereby removes this action captioned *Robert Blaurock v. C. R. Bard, Inc. et al.*, from the District Court of Butler County, Kansas to the United States District Court for the District of Kansas. Complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. In support of removal, Bard further states:

**I.  PROCEDURAL BACKGROUND AND RELEVANT FACTS**

1. On July 28, 2022, a civil action was commenced by Plaintiff Robert Blaurock, ("Plaintiff") in the District Court of Butler County, Kansas by the filing of a complaint captioned *Robert Blaurock v. C. R. Bard, Inc. et al.,* Case No. BU-2022-CV-000173 (the "Complaint").

2. C. R. Bard, Inc. ("Bard") was served with the Complaint on August 22, 2022.

3. Under 28 U.S.C. § 1446(b)(1), "all defendants who have been properly joined and served must join in or consent to the removal of the action." Therefore, Bard, the only properly joined and served defendant, consents to the removal of this action.

4. To the best of Bard's knowledge, on information and belief, Defendants Southwind Surgical Group, Brandon S. Cunningham, M.D., Alaina D. Dressler, P.A., Corizon LLC, Corizon Inc., Centurion Healthcare Provider/K.D.O.C. (collectively, "the Healthcare Defendants") have not yet been served with a copy of the Summons and the Complaint. The consent of unserved defendants is not required for removal. *See, e.g.*, 28 U.S.C. § 1441(b); *Cramer v. Devera Management Corp.*, Case No. 04-2102-JWL, 2004 U.S. Dist. LEXIS 9600, at*2 (D. Kan. 2004) (finding it "well settled ... that a defendant who has not been served need not join in or consent to removal").

5. All of the properly joined and served defendants consent to the removal of this action. Even if the Healthcare Defendants have been served, their consent to remove is not necessary because the Healthcare Defendants are fraudulently joined in this action. *See In re Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. 2010); *Raizada v. Auto Gallery Motorcars*, No. 12-2546-KHV, 2013 U.S. Dist. LEXIS 21812, at *5 (D. Kan. Feb. 19, 2013) (finding that, "[e]xceptions to the unanimity rule exist where "nominal, unknown, unserved or fraudulently joined defendants" do not join or consent to removal") (citations omitted).

6. This action involves allegations relating to a "Bard Mesh Perfix Plug" which Plaintiff alleges was manufactured and sold by Bard.[1] *See* Compl. at ¶ 3. Plaintiff alleges on November 2, 2018, Plaintiff had a "bilateral open inguinal hernia repair; with mesh," . . . after

---

[1] Bard does not admit any liability or waive any defenses in removing this action, including with respect to product identification.

which "that product did tear loose; causing plaintiff internal pain and suffering." Compl. at ¶¶ 2-3. Plaintiff further alleges that on May 6, 2022, his physician "Dr. Gaston and assistants/attendees performed removal of the existing Bard Davel [sic], Merlin Perfex [sic] Plug; and installed a different type of hernia or surgical mesh." *Id.* at ¶ 27. Moreover, Plaintiff alleges as a result of his hernia repair surgeries, he has experienced an "internal burning/stinging sensation," and "lives in fear" that his Perfix Plug hernia repair device "will also tear loose internally; and necessitate another repair surgery." *Id.* at ¶¶ 3, 10.

7. No previous request has been made for the relief requested herein.

8. No party in interest properly joined and served as a defendant in this action is a citizen of the state (Kansas) in which this action was brought. *See* 28 U.S.C. § 1441(b).

9. The United States District Court for the District of Kansas comprises the county in which this matter is now pending (County of Butler) and thus, pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 96, venue is proper.

## II. THIS NOTICE OF REMOVAL IS TIMELY

10. This Notice of Removal is filed within 30 days after Bard's receipt, through service or otherwise, of the initial pleading setting forth a claim for relief upon which this action is based. *See* 28 U.S.C. § 1446(b). Accordingly, Bard's removal of this action is timely.

11. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Bard has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. In filing this Notice of Removal, Bard reserves all defenses, including but not limited to lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, and failure to join and/or misjoinder of parties.

## III. JURISDICTION AND VENUE ARE PROPER

### A. There Is Complete Diversity of Citizenship Between Plaintiff and All Properly Joined and Served Defendants

12. This Court has jurisdiction over this removed action pursuant to 28 U.S.C. §§ 1332 and 1441. Pursuant to 28 U.S.C. §1332(a), this Court has original jurisdiction over this action because complete diversity of citizenship exists between Plaintiff and all properly joined and served Defendants, and the amount in controversy exceeds $75,000, exclusive of interests and costs.[2]

13. Plaintiff Robert Blaurock is a citizen of the State of Kansas, incarcerated at El Dorado Correction Facility with the Kansas Department of Corrections. *See generally* Complaint.

14. C. R. Bard, Inc. is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

15. Plaintiff alleges that Defendant Southwind Surgical Group is a corporation doing business in the state of Kansas. Compl., at ¶ 5.

16. Plaintiff alleges that Defendants Brandon S. Cunningham M.D., and Alaina D. Dressler P.A are health care providers performing services in the state of Kansas. *Id*., at ¶ 6.

17. Upon information and belief, Defendant Corizon Health LLC./Corizon Inc. is a corporation organized under the laws of the State of Tennessee with its principal place of business

---

[2] After removal, Bard intends to seek transfer of this action to *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation,* Case No. 2:18-md-2846, MDL No. 2846 (S.D.OH) ("MDL 2846"), because this case is one of many that have been filed in both federal and state courts across the country involving Bard's hernia repair devices made, at least in part, with polypropylene, including the product at issue in this action. This action belongs in MDL 2846 to facilitate judicial economy and coordinated pretrial proceedings, and, because there are other similar cases in the MDL.

in Tennessee, and, therefore is a citizen of Tennessee for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

18. Upon information and belief, Defendant Centurion Managed Care of Virginia, LLC (erroneously sued as "Centurion Health Care Provider") is a corporation organized under the laws of the State of Virginia with its principal place of business in Virginia, and, therefore is a citizen of Virginia for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

19. Upon information and belief, Defendant Kansas Department of Corrections is a Division of the State of Kansas doing business in the state of Kansas.

20. The Healthcare Defendants' citizenship does not preclude the proper removal of this action because they were fraudulently joined in this case. Thus, there is complete diversity of citizenship between Plaintiff and all properly joined and served Defendants.

**B. The Court Should Disregard The Healthcare Defendants' Citizenship for Jurisdictional Purposes Because They Are Fraudulently Joined in this Action**

21. The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."). Joinder is fraudulent when "there is no possibility that plaintiff would be able to establish a cause of action against the joined party in state court." *Montano v. Allstate Indemnity*, No. 99-2225, 2000 U.S. App. LEXIS 6852, at *4-5 (10th Cir. April 14, 2000) (citation omitted). In making this determination, a district court is allowed to "pierce the pleadings, . . . consider the entire record, and determine the basis of joinder by any means available." *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). In so doing, the court "must make a determination as to whether there is any reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Jackson v. Philip*

*Morris Inc.*, 46 F. Supp. 2d 1217, 1221–22 (D. Utah 1998). Although a plaintiff alleges a claim against non-diverse defendants, they are fraudulently joined "if in fact no cause of action exists." *Id*. Finally, in examining fraudulent joinder, a court may consider the Complaint, attachments thereto, and materials submitted with the notice of removal. *See, e.g.*, *Dodd*, 329 F.2d at 85 ("[U]pon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available."); *Vernon v. Oil Patch Grp., Inc.*, No. 20-1270 CG/GBW, 2021 U.S. Dist. LEXIS 12109, at *11 (D.N.M. Jan. 22, 2021) (in diversity jurisdiction cases, courts may consider "(1) plaintiff's cause of action as alleged in the complaint, (2) the notice of removal defendant filed with the federal court, and (3) other relevant materials in the record"). (citation omitted).

22. It is obvious that Plaintiff's Complaint fails to state a cause of action against the Healthcare Defendants. In fact, the substantive allegations against the Healthcare Defendants essentially claim that they engaged in implanted a Perfix Plug hernia repair device which "did tear loose; causing plaintiff internal pain and suffering," and that Defendants "could have foreseen or should have foreseen a probability of mesh failure." *See* Compl., ¶ 3(a)(d). However, the Healthcare Defendants are licensed health care providers who cannot be held liable for allegedly defective products implanted at their hospitals, and Plaintiff has not complied with the procedural requirements to allege a professional negligence claim. Accordingly, it is clear that the Healthcare Defendants were fraudulently joined in an attempt to defeat diversity jurisdiction because there is no possibility Plaintiff could prevail against them on any claims.

23. For instance, medical malpractice claims asserted against the Healthcare Defendants are subject to Kansas's requirements for such claims, where, "in order to show medical negligence, a plaintiff must ordinarily produce expert medical testimony," to demonstrate the

standard of care and causation, "except where the lack of care or the existence of proximate cause" is apparent to the average layperson. *Parker v. Cent. Kan. Med. Ctr.*, 178 F. Supp. 2d 1205, 1214-1215 (D. Kan. 2001) (granting summary judgment on medical malpractice claim lacking expert testimony) (citation omitted); *see also Sperry v. Corizon Health*, No. 5:18-CV-03119-EFM-ADM, 2020 U.S. Dist. LEXIS 217397, at *23-24 (D. Kan. Nov. 20, 2020) (granting summary judgment in favor of defendant on medical malpractice claims where plaintiff failed to offer expert testimony in support). Plaintiff acknowledges the need for expert testimony to state a cognizable medical malpractice claim, yet failed to provide any such testimony. Compl., at p. 12-13. Therefore, Plaintiff's failure to comply with basic requirements for filing a claim against a health care provider demonstrates that the Healthcare Defendants were fraudulently joined in this action. Numerous courts have found plaintiffs have fraudulently joined non-diverse healthcare providers in cases alleging medical malpractice and product liability claims based on injuries allegedly related to implantation of a medical device, where, as here, a plaintiff has failed to fulfill the state law medical malpractice prerequisites. For example, the Fifth Circuit Court of Appeals held, *en banc*, that the addition of a Louisiana healthcare provider to a lawsuit against a medical device manufacturer constitutes improper joinder and does not defeat the court's diversity jurisdiction when the plaintiff fails to comply with pre-suit notice requirements for medical malpractice claims. *See Flagg v. Stryker Corp.*, 819 F.3d 132, 138 (5th Cir. 2016) ("It follows that, at the time of removal, Flagg was unable to "establish a cause of action against the [Medical Defendants] in state court. Thus, the district court properly discounted the citizenship of the Medical Defendants."); *Porter v. Stryker Corp.*, No. 6:19-0265, 2019 U.S. Dist. LEXIS 135859 (W.D. La. Aug. 12, 2019) (denying motion to remand, based on fraudulent joinder, where plaintiff "has not exhausted his administrative remedies by presenting these claims to a medical review panel," and ruling "the

citizenship of [the healthcare provider] is to be disregarded"); *Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 644 (S.D. W.Va. 2017) (denying remand, ruling that "West Virginia Code § 55-7B-6, imposes a series of procedural prerequisites for filing a medical malpractice claim," and "[i]f this requirement is not met, the case must be dismissed").

24. To the extent Plaintiff's claims against the Healthcare Defendants are not barred by Kansas procedural requirements, they are still not viable because licensed heath care providers like the Healthcare Defendants are not engaged in the business of selling medical devices and cannot be held liable for products liability as a matter of law. Plaintiff's claims are governed by the Kansas Product Liability Act ("KPLA"), which defines a "seller" as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption." Kan. Stat. Ann. § 60-3302. Furthermore, the KPLA specifically exempts healthcare providers, providing that a "seller includes a manufacturer, wholesaler, distributor or retailer of the relevant product, ***but does not include a health care provider***, . . . who utilizes a product in the course of rendering professional services." *Id*. (emphasis added). Thus, neither a physician who implants a medical device, nor a hospital who charges a fee for implantation of the product during surgery is a "seller" of the product for purposes of products liability. As licensed health care providers, the Healthcare Defendants are, by Kansas law, not a manufacturer, wholesaler, or retailer of any Bard hernia repair devices or other medical devices and are not "engaged in the business of selling" such products. *Id*.

25. Therefore, Kansas law expressly precludes product liability claims against healthcare providers such as the Healthcare Defendants, and the majority of courts nationwide, have concluded similarly—physicians and hospitals cannot be liable for products liability because they are not in the business of selling products that are ultimately implanted in patients. *Johnson*

*v. Zimmer Spine, Inc.*, No. 2:08-CV-00672-KJD-LRL, 2008 U.S. Dist. LEXIS 144619, at *7 (D. Nev. Aug. 8, 2008) ("In the majority of jurisdictions, the doctrine of strict product liability generally is not applied to hospitals, unless the hospital was negligent or involved in intentional misconduct."). Courts reason that hospitals provide professional medical services and a product implanted in a patient is provided as part of that service. For example, in *Johnson*, plaintiff was implanted with a medical device during a surgery to repair his spine, the device was allegedly defective, and he filed suit against the hospital and device manufacturer. 2008 U.S. Dist. LEXIS 144619, at *7, *8. The court concluded that the hospital was not a "seller," because "the essence of the relationship between a hospital and its patients does not relate essentially to any product or piece of equipment . . . **but to the professional services it provides**." *Id.* (citations and quotations omitted) (emphasis added). *See also Hector v. Cedars-Sinai Medical Center*, 180 Cal. App. 3d 493, 505 (1986) (hospital was not subject to strict liability for a defective pacemaker because the "patient does not enter the hospital merely to purchase a pacemaker but to obtain a course of treatment which includes implantation of a pacemaker"); *Vergott v. Deseret Pharm. Co.*, 463 F.2d 12, 16 (5th Cir. 1972) ("a hospital is not a seller engaged in the business of selling the product").[3]

26. The Healthcare Defendants purchased the Perfix Plug hernia repair device from Bard and there is no allegation that they altered the device. Indeed, allegations against the Healthcare Defendants are wholly inconsistent with the gravamen of Plaintiff's Complaint. Plaintiff's allegations against the Healthcare Defendants, the hospital and healthcare providers

---

[3] *See also Zbras v. St. Vincent's Med. Ctr.*, No. CV95323593S, 2002 WL 532441, at *1 (Conn. Super. Ct. Mar. 20, 2002) (granting summary judgment in favor of hospital defendant who implanted an allegedly defective screw because "hospitals are not engaged in the business of selling equipment utilized in operative procedures but rather are engaged in the business of providing medical services"); *Lederman v. Howmedica Osteonics Corp.*, No. 8:13-cv-506-T-30AEP, 2013 U.S. Dist. LEXIS 51659 (M.D. Fl. April 10, 2013) (physician defendant who implanted a hip prosthesis was fraudulently joined because "strict liability claims are limited to manufacturers and others in the distribution chain" and thus plaintiff's product liability claims fail as a matter of law); *North Miami General Hosp., Inc. v. Goldberg*, 520 So. 2d 650, 652 (Fla. Ct. App. 1988) ("strict liability may not be invoked by patient against a hospital or physician in the use of a defective medical implement).

responsible for implantation of the Bard hernia device, cannot be reconciled with his core product liability allegations against Bard. The crux of Plaintiff's Complaint against the "Defendants" is that the Plaintiff's physicians "incorrectly installed" the Perfix Plug hernia repair device, causing it to "tear loose, resulting in pain and suffering." Compl., ¶ 3(a). However, in the same paragraph, the Complaint asserts that Bard "manufactured a defective product," and claims "Defendants" should have "foreseen a probability of mesh failure." *Id*., at ¶ 3(b)(c). The Complaint further asserts that Bard was responsible for manufacturing and designing the Perfix Plug hernia repair device. *Id*. Finally, the Exhibits attached to Plaintiff's Complaint demonstrate that his claims are, in fact, for product liability, not medical malpractice.[4] Notably, however, there is no allegation that the Healthcare Defendants played any role in the design, manufacture, warnings, or marketing of the Perfix Plug hernia repair device and because they did not—and could not—have had access to information that was allegedly withheld from the general public, the Healthcare Defendants cannot be held responsible for Plaintiff's alleged injuries.

27. In short, the thrust of Plaintiff's First Amended Complaint is that Bard – not the Healthcare Defendants – was responsible for the alleged defects in the design, manufacture, warnings, marketing, and sale of the Perfix Plug hernia repair device that purportedly caused Plaintiff's injuries.

---

[4] For example, in a July 9, 2020 request to prison healthcare officials, Plaintiff stated "in particular, the information requested is name of the surgeon and hospital, date of procedure, follow-up exam date, and emphasis upon the type of mesh used, and manufacturer thereof." Compl., Exhibit G. Similarly, in an August 19, 2020, request for his medical records, Plaintiff stated, "***my only concern is the type of mesh, i.e. specific name and manufacture thereof. It is my best hope not to involve Hays Med. nor Dr. Cunningham as defendants***." *Id*., Exhibit H (emphasis added). Plaintiff wrote a letter to his surgeon, Dr. Cunningham, on September 4, 2020, "in order to seek [his] assistance and cooperation .in a probable . . . Tort Claim against the mesh manufacture [sic] DAVOL." *Id*., Exhibit L. Finally, on September 12, 2020, Plaintiff sent Bard a letter of intent to file a legal claim resulting from injuries allegedly related to defects in the Perfix Plug hernia repair device. *Id*., Exhibit N. As such, it is apparent Plaintiff's allegations and claims focus on the purported defects in the Perfix Plug hernia repair device with which Plaintiff was implanted.

28. By contrast, the claims against the Healthcare Defendants are based on whether they breached the duty of care in the provision of medical services to Plaintiff. Compl., ¶¶ 3, 10, 11. The crucial aspects of the two claims are diametrically opposed and logically inconsistent. In similar circumstances, courts have consistently found fraudulent joinder where plaintiffs have improperly joined product liability claims against pharmaceutical manufacturers with contradictory medical malpractice claims against healthcare providers. *See, e.g.*, *Baisden v. Bayer*, 275 F. Supp. 2d 759, 762-63 (S.D.W. Va. 2003) (denying remand where complaint alleged that manufacturer concealed or misrepresented safety information regarding prescription drug, while alleging that physician was negligent in failing to warn of potential risks); *In re Baycol Prods. Litig.*, No. MDL 1431(MJD), 02-4835, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) (finding that a physician was fraudulently joined when allegations that he knew or should have known of Baycol's risks were inconsistent with allegations that the manufacturer concealed information).[5] As in the cases above, this Court should rule that the Healthcare Defendants are fraudulently joined.

---

[5] Similarly, numerous courts have ruled that plaintiffs improperly joined malpractice claims against healthcare providers with product liability claims against prescription product manufacturers. *See, e.g.*, *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (holding that malpractice claims against healthcare providers were fraudulently misjoined with claims against manufacturers for the allegedly defective mesh patch, and "to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum."); *see also In re Guidant Corp., Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, Case No. 07-1129, 2007 WL 5377783, *7 (D. Minn. June 4, 2007) (severing and remanding only the claims against defendant hospital because "the basis for the causes of action against [the hospital] do not arise from the same transaction and occurrences as those in the causes of action against the [medical device manufactures]"); *In re Rezulin Prod. Liab. Litig.*, MDL No. 1348, 2003 WL 21276425, *1-2 (S.D.N.Y June 2, 2003) (finding claims against non-diverse physician were misjoined with claims against drug manufacturer); *Stone v. Zimmer, Inc.*, No. 09-08202-CIV, 2009 WL 1809990, *4 (S.D. Fla. June 25, 2009) ("The joinder of the malpractice claim against [the doctor] and the [pain management center] with the product liability claim against [the product manufacturer] is thus inappropriate because these claims do not both involve common questions of law or fact and do not assert joint, several or alternative liability arising out of the same transaction, occurrence or series of transactions or occurrences.") (internal quotation omitted).

29. Accordingly, the Court should not consider the Healthcare Defendants' in-state status as a bar to removal because the fraudulent joinder of the Healthcare Defendants is obvious under well-settled state law.

## IV. THE AMOUNT IN CONTROVERSY IS MET

30. Only a simple pleading that asserts a "plausible allegation" is necessary to show that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014). Once made, a defendant's allegations are presumed correct. *See id.* The amount in controversy in this case can be determined according to the allegations in Plaintiff's Complaint. *See, e.g., Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). "A complaint that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal." *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008).

31. Plaintiff alleges he has suffered damages in excess of the amount-in-controversy and is "seeking $ 200,000 due to injury." Complaint at ¶ 1. Further, given these allegations and the severity and type of injuries alleged in Plaintiff's Complaint, the amount-in-controversy requirement is met here because it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (holding that the amount in controversy is satisfied where plaintiffs alleged economic loss, medical and health expenses, and claimed serious medical conditions).

32. Plaintiff alleges multiple adverse events after the Perfix Plug hernia repair device implantations, claiming that he has experienced "pain and suffering," including "burning" and the need for additional surgery. Compl. ¶¶ 3, 10. Finally, Plaintiff seeks "enforcement of monetary,"

punitive and exemplary damages as "found equitable by the jury or this Court, and all other relative motions pertaining to his civil action." Compl., Prayer for Relief.

33. Therefore, in light of the alleged nature of the injuries set forth in the Complaint, and the claimed damages for past and future non-economic and economic losses, including punitive damages, it is "facially apparent" that the amount in controversy exceeds $75,000, exclusive of interest and costs, *see In re Rezulin*, 133 F. Supp. 2d at 296, and Bard sufficiently alleges the basis for diversity jurisdiction at the notice-of-removal stage. *See Dart*, 135 S. Ct. at 553.

## V. REMOVAL IS OTHERWISE PROPER

34. Pursuant to 28 U.S.C. § 1446(a) and D. Kan. Rule 81.2, copies of all records and proceedings had in the state court are attached to this Notice of Removal as **Exhibit "A."**

35. Bard will file a copy of this Notice of Removal with the Clerk of the District Court of Butler County, Kansas, the state court in which this action is currently pending, as required by 28 U.S.C. § 1446(d). Defendant's Notice to Plaintiff of Filing of Notice of Removal is also being filed and served upon Plaintiff as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendant C. R. Bard, Inc., pursuant to 28 U.S.C. § 1441, respectfully removes this action from District Court of Butler County, Kansas to the United States District Court for the District of Kansas.

This 29th day of August, 2022.　　　　　　　Respectfully submitted,

*/s/ Kara T. Stubbs*
Kara T. Stubbs　　　　　　KS # 15805
BAKER STERCHI COWDEN & RICE LLC
2400 Pershing Road, Suite 500
Kansas City, MO 64108
Telephone:　(816) 471-2121
Facsimile:　(816) 472-0288
stubbs@bakersterchi.com

**ATTORNEY FOR DEFENDANT
C. R. BARD, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was filed with the Clerk of the Court using the CM/ECF system on this 29th day of August, 2022, which will send notification of the same to all counsel of record. A copy was also served via U.S. Mail, addressed to the following:

Robert D. Blaurock　#86516
El Dorado Correctional Facility
1737 S.E. 54 HWY.
P.O. Box 311
El Dorado, KS. 67042

**PLAINTIFF**

*/s/ Kara T. Stubbs*