IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT WICHITA

| | |
|---|---|
| ROBERT D. BLAUROCK, | |
| Plaintiff. | Case No. 6:22-cv-1196 |
| v. | Removed from the District Court of Butler County, Kansas |
| SOUTHWIND SURGICAL GROUP, BRANDON S. CUNNINGHAM, M.D.: ALAINA D. DRESSLER, P.A. C.R. BARD INC.,ET.AL.: CORIZON HEALTH, LLC.: CENTURION OF KANSAS, LLC. A.K.A. CENTURION MANAGED CARE OF VIRGINIA, LLC. FOR K.D.O.C. | Case No. BU-2022-cv-173 JURY TRIAL DEMANDED |
| Defendants.et.al | |

PLAINTIFF'S REQUEST FOR PERMISSION TO AMEND
THE PLEADING/PETITION
AS TO THE MEDICAL MALPRACTICE, MEDICAL NEGLIGENCE TORT ACTION
Under Fed.R.Civ.P. Rule 15(c)(1)(B)(C)

The plaintiff Robert D. Blaurock, pro se; in the above captioned case matter, asks this Court for permission to amend the pleading/petition as to the medical malprctice, medical negligence tort action, due to misnomer/identification, i.e. proper names of the defendants et.al., newly disclosed Addresses made known to the plaintiff by attorneys for the defendants, et. al.; and to clarify the acts to which each named defendant may be held liable. Plaintiff asks $ 200,000.00 total for injuries.

1.    Each defendant, et.al. whether properly named or misnamed in the original State Court petition, prior to removal; did receive a copy of the complaint and subsequent or accompanying

motions, pleadings and filings made by the plaintiff in both
the state and federal Courts, at all such defendant's et.al
previous addresses/locations; a fact made known; where each
named defendant,et.al.; soon thereafter receipt of plaintiff's
complaints against them; sought legal advisors/counsels to
develope a defense in state and/or federal Court proceedings.

   Plaintiff, after receiving responses and counterclaims
offered by those defendant's et.al. counsels of record, became
aware of such defendant's correct names and address changes.
Such misnomers and address changes should not bar plaintiff's
allegations against any defendant. Plaintiff has no Google or
internet access in which to correctly name & locate defendants.

2.    In order to clarify the allegations and acts to which the
plaintiff believes each defendant is civilly liable, plaintiff
claims are as follows:

3.    **Defendant Southwind Surgical Group:** at the time of the
Nov. 2nd, 2018 (double bilateral inguinal hernia repair)
procedure performed upon the plaintiff were either: (i) a
surgical group under contract with Corizon Health, LLC. or the
Kansas Dept. of Corrections to render medical services to
persons in custody of the Kansas Sec. of Corrections, to which
the plaintiff is an intended beneficiary of such contract, (ii)
a surgical group who contracts with physicians/surgeons to
render medical care to all citizens incarcerated or otherwise;
(iii) a form of healthcare entity under contract with the
Hays Medical Group and other hospitals where physicians may
enjoy surgical privileges or the art of healing therein.

Defendant Southwind Surgical Group has a resposibility to know the licensing, certifications; qualifications of the physicians/surgeons operating under their ' Group ' to whom they may offer patient referals or assignments. This in order to assure patient safety and proper treatments rendered. As Such, Southwind Surgical Group would become liable in part, should injury occur to a patient caused by any physician in their Group, due to physician error, improper technique, etc.

Defendant Southwind Surgical Group may have entered into an agreement with the defendant C.R. Bard Inc.,et.al./Davol Inc. to purchase directly or through an insurance buyer, or recomend usage of medical devices, i.e. hernia mesh produced by C.R. Bard Inc. If such information, e.g. agreement exists, whether made by means of admission or discovery/disclosures, Southwind Surgical Group would become liable in part for any injuries to a patient to whom such medical device was implanted. Southwind Surgical Group would reasonably know whether or not a possible product warranty issue exists, prior to usage of any such medical device/hernia mesh. It is a professional duty. Southwind Surgical Group should reasonably know as to whether or not a physician in their Group has entered into agreement with C.R. Bard Inc., et.al./Davol Inc. to use, recomend, or implant into a patient a medical device manufactured by C.R. Bard Inc. and the risk percentage of product imperfections.

Defendant Southwind Surgical Group should reasonably know as to whether or not the Merlin Perfix Plug Mesh was the correct medical device to be implemented due to the sizes and locations of the plaintiff's herniated areas.

3.

4.     Defendant Brandon S. Cunningham, M.D. in regards to the
Nov. 02, 2018 (double bilateral inguinal hernia repair)
procedure: (a) implemented an inadequate surgical technique
or incorrect surgical technique upon the plaintiff, due to the
sizes and locations of the herniated areas, or (b) selected an
inadequate or incorrect medical device; i.e. Merlin Perfix Plug
Mesh to implant into the plaintiff's abdomen, (c) lacked the
necessary surgical skills to perform a procedure on the
plaintiff, (d) inadequately or incorrectly stitched the
the hernia mesh into an area iside the plaintiff's abdomen,
an operative error; or (e) implanted into the plaintiff a
medical device, i.e. hernia mesh, which has a possible
product warranty liability prone to failures; and (f) failed
to disclose to the patient, informations that there may exist
a possible product warrantly liability.

      Plaintiff bases these allegations due to pre-secondary
reparative surgery consultations/discussions with Mr.Jerry
Gaston, M.D. The physician Jerry Gaston, M.D. was able to
diagnose and discuss with the plaintiff these facts, due to
tests performed prior to the 5/06/22 procedure, test such as:
(sonagram, C.T. Scan, physical examinations, professional
experiences and knowledge), Jerry Gaston, M.D. stated that
the physician Brandon S. Cunningham, simply placed the C.R.
Bard Inc., medical device on or over the top surface of the
hernias, then secured the mesh to the patient's inner thigh
and abdominal tissues, resulting in the mesh tearing loose.

      Jerry Gaston, M.D. explained to the plaintiff that the

4.

correct surgical technique that should have been implemented at
the time of the 11/2/18 procedure, of which Jerry Gaston, M.D.
would implement during the reparative procedure is: (a) implant
a different type of mesh ' not a plug style ' under the pelvic
bone, attach it around the bone and surrounding tissues, (b)
basically arrange the herniated tissue into a proper location,
attach it to the under pelvic bone mesh and surrounding tissue;
(c) implant a different type of mesh ' not a plug style ' over
the herniated tissue, attach it to the lower implanted mesh;
(d) attach the upper mesh to surrounding tissue to prevent
tearing loose. Note! "[O]nly the 5/6/22 operative report; a
deposition of Jerry Gaston, M.D.; or testimonies of Jerry
Gaston, M.D. during trial proceedings as an expert medical
witness is capable of determining the reinjury causation. "

Defendant Brandon S. Cunningham, M.D. as a physician and
upon his own discretion, entered into an agreement with C.R.
Bard Inc. to use such manufacture's medical devices, i.e.
hernia mesh. If such information is developed by means of
discovery/disclosure and proven true, the physician would
be reasonably aware of a possible product warranty liability,
but neglected to inform the plaintiff of a possible product
default. Such would constitute medical negligence.

If the 5/6/22 operative report, deposition of Jerry Gaston,
M.D.; or expert witness testimony during trial proceedings
reveal any of the allegations described on (pg.4., paras.
a-f), plaintiff has met the criterias for Medical Malpractice.

In either scenario or situation, Brandon S. Cunningham,
M.D. is liable for injuries caused to the plaintiff.

5.     Defendant Alaina D. Dressler, P.A. in regards to the
Nov. 02, 2018 (double bilateral inguinal hernia repair)
procedure: (a) implented an inadequate surgical technique
or incorrect surgical technique upon the plaintiff, due to the
sizes and locations of the herniated areas, or (b) selected an
inadequate or incorrect medical device, i.e. Merlin Perfix Plug
Mesh to implant into the plaintiff's abdomen; (c) lacked the
necessary surgical skills to perform a procedure on the
plaintiff, (d) inadequately or incorrectly stitched the
hernia mesh into an area inside the plaintiff's abdomen; an
operative error; or (e) implanted into the plaintiff a medical
device, i.e. hernia mesh, which has a possible product
warranty liability prone to defects; and (f) failed to disclose
to the patient, informations that there may exist a possible
product warranty liability or defect.

Plaintiff bases these allegations due to pre-secondary
reparative surgery consultations/discussions with Mr.Jerry
Gaston, M.D. The physician Jerry Gaston, M.D. was able to
diagnose and discuss with the plaintiff these facts, due to
tests performed prior to the 5/06/22 procedure, test such as:
(sonagram, C.T. Scan, physical examinations, professional
experiences and knowledge). Jerry Gaston, M.D. stated that
the physician, Alaina D. Dressler, simply placed the C.R.
Bard Inc., medical device on or over the top surface of the
hernias, then secured the mesh to the patient's inner thigh
and abdominal tissues, resulting in the mesh tearing loose.

Jerry Gaston, M.D. explained to the plaintiff that the

6.

correct surgical technique that should have been implemented at
the time of the 11/2/18 procedure, of which Jerry Gaston, M.D.
would implement during the reparative procedure is: (a) implant
a different type of mesh ' not a plug style ' under the pelvic
bone, attach it around the bone and surroundingl tissues, (b)
basically arrange the herniated tissue into a proper location,
attach it to the under pelvic bone mesh and surrounding tissue;
(c) implant a different type of mesh ' not a plug style ' over;
the herniated tissue, attach it to the lower implanted mesh;
(d) attach the upper mesh to surrounding tissue to prevent
tearing loose. Note! " [O]nly the 5/6/22 operative report, a
deposition of Jerry Gaston, M.D.; or testimonies of Jerry
Gaston, M.D. during trial proceedings; as an expert medical
witness is capable of determining the reinjury causation. "

Defendant Alaina D. Dressler, P.A. as a physician and upon
her own discretion, entered into an agreement with C.R. Bard
Inc. to use such manufacture's medical devices, i.e. hernia
mesh. If such information is developed by means of admission,
discovery/disclosure and proven true, the physician would
be reasonably aware of possible product warranty liability,
but neglected to inform the plaintiff of a possible product
defect. Such would constitute medical negligence.

If the 5/6/22 operative report, deposition of Jerry Gaston,
M.D.; or expert medical witness testimony during trial,
reveals any of the allegations described on (pg.6. paras.
(a-f), plaintiff has met the criterias for Medical Malpractice.

In either scenario or situation, Alaina D. Dressler,
P.A. is in part liable for injuries caused the plaintiff.

7.

6.     Defendant C.R. Bard Inc.et.al./Davol Inc., whether located
in Warwick, R.I. or main office in New Jersey, to which the
attorney for such defendant will not disclose the identity
of the C.E.O./owners nor their address in the state of New
Jersey; is the manufacture of the (Bard/Davol 1 Plug Marlin
Perfix Mesh, XL., [REF] 0112780, [LOT] HUBX 1127, Exp. Date
10/28/22) implanted into the plaintiff on Nov. 02, 2018. For
exact reasonings yet to be disclosed, that can only be verified
by the 5/6/22 operative report, said medical device/hernia mesh
became unattached in the plaintiff's lower left side abdomen,
thus causing reinjury to the plaintiff, resulting in numberous
physical symptoms, pain and suffering, leading to necessitation
of a reparative surgical procedure. Likewise, and as stated
competently in the original state tort claim petition, the
defendant C.R. Bard Inc.et.al. is also the manufacture of
the (Brad/Davol 1 Plug Marlin Perfix Mesh, XL., [REF] 0112780,
[LOT] HUCT 2077, Exp. Date 06/28/23) implanted into plaintiff
on Nov. 02, 2018, on his right side lower abdomen, The right
side medical device/hernia mesh is intact in the plaintiff.

     Defendant C.R. Bard Inc.et.al/Davol Inc. sold the medical
device/hernia mesh to either the; (Hays Med. Hospital,
Southwind Surgical Group, Brandon S. Cunningham, M.D. and/or
Alaina D. Dressler, P.A. or through an Insurance Buyer, or
some other unknown entity or person) intended for implantation
into patients who have hernia injuries,

     Defendant C.R. Bard Inc.et.al./Davol Inc. employs or hires
the services of researchers who develope and test for safety
of their medical devices/hernia mesh, and as a result of such

8.

research and development testings, become aware of statistics, i.e. a percentage or chance of possible failure or defects of said medical devices. Afterwards, the manufacture must seek approval from the F.D.A. for usage into human patients or intended recipients, and disclose product warranty informations.

Defendant C.R. Bard Inc.et.al./Davol Inc. has a professional duty or obligation to disclose to any potential purchasers of a possible product defect and/or product warranty disclosure. In the same respect, any purchaser of a medical device/hernia mesh has a reciprocal professional obligation/and duty to disclose any product defect and/or product warranty disclosure to any person whom such device may become implanted. No person, physician/surgeon, hospital nor manufacture offered to the plaintiff any possible product defect or warranty informations.

Defendant C.R. Bard Inc.et.al./Davol Inc., due to recent informations made available to the plaintiff by and through Mr.John W. Nichols, Clerk of the Panel of the United States Judicial Panel on Multidistrict Litigation, Thurgood Marshall Federal Judiciary Building, One Columbus Circle, NE. Room G-255, North Lobby, Washington, DC. 20002-8041, disclosed to the plaintiff that since the date of August 2, 2018 and continuing throughout the year of 2022, 50 civil actions and an additional 343 civil actions are before the United States District Court for the Southern District of Ohio, Honorable Edmund A. Sargus, Jr. presiding, to which the plaintiff's claims may become enjoined. It is apparent that a probable      . medical device defect exist involving C.R. Bard Inc.et.al.

9.

Such facts do not act as a bar to the plaintiff's claims against the defendants Southwind Surgical Group, Brandon S. Cunningham, M.D. nor Alaina D. Dressler, P.A. for acts of medical malpractice, medical negligence, or both. The 5/6/22 operative report and expert medical opinion of Jerry Gaston, M.D. supports these claims irregardless of product defect.

" [I]f defendant C.R. Bard Inc.et.al./Davol Inc. is proven to have a product defect/warranty liability, such only supports a secondary civil action against the manufacture, seperate from the medical malpractice, medical negligence. " It substantiates improper removal from the State Court.

7. The Defendant Corizon Health, LLC. irregardless of the name misnomer and address location error stated within the State Court tort claim petition was the medical care provider to persons incarcerated in the Kansas Department of Corrections and Kansas Secretary of Corrections inbetween the approximate years of January 2014 through January 2020. Corizon Health, LLC. was under contract with all K.D.O.C. facilities to render medical services to inmates, to which the plaintiff is a third party intended recipient of those medical services.

Defendant Corizon Health, LLC. was made aware of the plaintiff's herniated injuries as early as January 2014, and from the available K.D.O.C. patient files electronically stored and remaining from the previous healthcare provider Correct Care Solutions.

Note! In the year of 2014, the defendant Corizon Health, LLC. was formerly known as Corizon WC. assumably Well Care.

10.

Factually, the plaintiff's herniated injuries are well
documented facts inbetween the years of 2007-2013 by physician
Larry Baumgardner, M.D. and Deb Lundry (A.P.R.N.) while the
plaintiff was housed at the Hutchinson C.F./K.D.O.C. under the
healthcare provider Correct Care Solutions.

Defendant Corizon Health, LLC., formerly Corizon WC., in
the year of 2014, month of September, authorized an Open
Appendectomy surgical procedure, and in October 2014, Corizon
authorized a colonoscopy and upper right hemicolectomy surgery,
from which the accute colon cancer, mucinous cystadenocarcinoma
of the appendix and colon became diagnosed and confirmed. Such
medical records held by Corizon also re-documents the hernias.

Nonetheless, Defendant Corizon Health, LLC., formerly
Corizon WC. recognized the plaintiff's hernias, documented the
injuries, recommended and supplied usage of a hernia belt, i.e.
medical device, thus acknowledging that plaintiff's injuries
were reduceable by means on operative procedure. However, for
a period of approx. 6-years, Corizon refused to authorize such
necessary surgical procedure. Such constitutes medical
negligence. Corizon would not approve the plaintiff's bottom
bunk request, nor allow the plaintiff light duty work
restrictions. Therefore, each and every day the plaintiff was
forced to perform work chores beyond his physical capabilities,
the size of the hernias increased along with intolerable pains.
The lack of treatment constitutes medical negligence if not
deliberate indifference to plaintiff's medical needs, Corizon
is in part civilly liable for non-treatment, increase in injury
size, through 6-years of unnecessary pain and suffering.

11.

Eventually, Defendant Corizon Health,LLC. formerly Corizon WC, inbetween the dates of February 15th, 2018 throughout November 2018, and while the plaintiff was relocated to the K.D.O.C. Norton Correctional Facility, began documenting the serious nature of the hernia injuries and sought approval of the Chief Physician in Topeka, KS. to authorize a (double bilateral inguinal hernia repair procedure). Corizon soon authorized the plaintiff's medical lower bunk restriction.

Corizon referred or recommended to the plaintiff, Brandon S. Cunningham, M.D. to perform physical examinations at the Phillipsburg, KS. Hospital, and other pre-surgical tests, that led to the procedure being conducted at the U.M.K.C. Hay's KS. Hospital.

Defendant Corizon Health, LLC. formerly Corizon WC. as a healthcare provider should have known: (a) Brandon Cunningham's surgical credentials, (b) a possible product defect, i.e. hernia mesh; (c) product warranty liability, medical device prone to failure. Corizon would have a professional obligation and duty to inquire of such informations prior to allowing the physician to perform an inadequate surgical technique or implanting a possible defective medical device/hernia mesh into a patient under their care, then disclose to the patient/plaintiff these informations. None of these critical informations were made known to the plaintiff by Corizon, [o]nly that the plaintiff must agree to the operative procedure and signature agreement.

For these additional reasonings, defendant Corizon is in part, partially liable for reinjury to the plaintiff and delays in getting the reparative surgical procedure approved, completed.

8.    The Defendant Centurion of Kansas,LLC. a.k.a. Centurion
Managed Care of Virginia,LLC. or any other name Centurion now
identifies themselves: (i) entered into contract agreement with
the State of Kansas, Secretary of Corrections, and/or Kansas
Dept. of Corrections to provide medical care services to inmates
held in custody of the K.D.O.C. Centurion began providing
healthcare to such inmate/offenders in approx. January 2020.
Plaintiff is a third party intended beneficiary of said
contract involving medical care services.

Defendant Centurion began documenting the plaintiff's
medical services request forms and need for reparative surgery
to remove the C.R. Bard Inc.et.al./Davol Inc. medical device/
hernia mesh in July-August 2020, and continued documenting
the plaintiff's injuries as indicated upon Plaintiff's Exhibits
(G,M;O;P;Q;R;S;T) which are attached to the original State
district court tort claim filed by the plaintiff in Butler
County, Kansas, Case No. BU-2022-cv-173. Centurion allowed a
time period of approx. 22-months to pass before the May 06,
2022 reparative surgical procedure was performed. Plaintiff
endured and suffered numberous health complications, pain and
suffering throughout that 22-month waiting period.

Defendant Centurion did throughout that 22-month time
span, conducted several physical examinations of the herniated
areas complained of, and performed additional tests such as:
(sonagram, CT Scan; possibly Barium ingestion & X-Ray).
Centurion did also re-approve plaintiff's work restrictions
and bottom bunk only medical status.

13.

Defendant Centurion had access to the previous healthcare provider, e.g. Corizon's records, files, and electronically stored patient informations pertaining to the plaintiff. Therefore, Centurion was aware that; C.R. Bard Inc.,et.al./ Davol Inc.: (i) 1 plug Marlin Perfix Mesh, XL, [REF] 0112780, [LOT] HUBX 1127, exp. date 10/28/22 was implanted into the plaintiff on 11/2/18, and it is that medical device/hernia mesh which became unattached/disengaged, (ii) 1 Plug Marlin Perfix Mesh, XL, [REF] 0112780, [LOT] HUCT 2077, exp. date 6/28/23 was also implanted into plaintiff on 11/2/18. Due the fact that the medical device/hernia mesh tearing loose on the plaintiff's left side, possibly caused by a manufacture defect, it would be reasonable for Centurion to assume that the right side mesh would also tear loose, as the product came from the same manufacture, [*esp] when the plaintiff returns to work or enjoys an exercise routine, something he has not been able to partake for a period of approx. 16-years while in K.D.O.C.

Instead of requesting that both medical devices, i.e. hernia mesh be removed and replaced during the 5/6/22 repair surgery, Centurion opted to repair and replace only the left side mesh, leaving the plaintiff subject to a similar and subsequent reinjury, requiring yet another repair surgery. Whether preventative maintenence or calculated risk it is the plaintiff's future health at risk. Such constitutes medical negligence

Defendant Centurion, having access to Corizon's medical records, files and electronically stored informations, are

14.

aware that on 11/2/18, Brandon S. Cunningham, M.D. and Alaina
D. Dressler, P.A. were the surgical team that (a) implemented
an inadequate or incorrect surgical technique, due to the sizes
and locations of the injuries, (b) selected an inadequate or
incorrect medical device/hernia mesh to implant; (c) lacked the
necessary surgical skills to perform the 11/2/18 procedure; (d)
may have applied inadequate or incorrect stitching techniques;
(e) implanted a medical device/hernia mesh known to have a
manufacture defect or product warranty liability; and (f) did
not inform the plaintiff of a possible product defect.

From datas gathered throughout pre-reparative surgery and
the medical opinion of Jerry Gaston, M.D., Centurion is aware
that there exist a high probability of the same or exact type
of reinjury will occur on the plaintiff's right side, as it
occurred on the left side, based on all facts and medical
opinion of Jerry Gaston, M.D. It would constitute medical
negligence, medical malpractice, or indifference not to repair
both the left and right side injuries correctly on 5/6/22. Now,
the plaintiff will not be able to enjoy recreational activity,
exercise, or gain an hourly wage job/employment without fear
of reinjury or signing a waiver thus agreeing to waive future
injury liability.

Defendant Centurion has repeatedly thwarted plaintiff's
attempts to gain access and copy of the 5/6/22 operative
report, affecting all parties ability to litigate a claim.

Centurion, for all reasonings stated to throughout pages
(13,14, and 15) are in part civilly liable to plaintiff's
current and predictable future injuries.

## MEMORANDUM IN SUPPORT
### (MEDICAL MALPRACTICE)

**Standard Of Review:**

In Tefft v. Wilcox,6 Kan.46,61(1870)... This Court held that
a physician is obligated to his patient under the law to use
reasonable and ordinary care and diligence in the cases he under-
takes, to use his best judgment, and to exercise that reasonable
degree of learning, skill, and experience which is ordinarily
possessed by other physicians in the same or similar locations.
We have continued to impose those duties upon physicians. See;
P.I.K. Civil 15:01 and cases there cited. A physician also has
the duty to make a reasonable disclosure to the patient of
pertinent facts [***21] within his knowledge related to a proposed
treatment, in order that the patient may intelligently consent
or refuse treatment.

**Analysis:**

A medical malpractice claim requires the same elements of
proof as any negligence action: (1) the existence of a duty, (2)
breach of that duty, (3) injury, and (4) a casual connection
between the duty breached and the injury suffered. Schmidt v.
Shearer,26 Kan.App.2d.760,764,995 P.2d.381(1999).

To establish a prima facie case of medical malpractice, a
plaintiff must demonstrate that: (1) the defendant had a duty to
conform to a specific standard of conduct for the protection of
others against an unreasonable risk of injury, (2) the defendant
failed to conform to that required standard, (3) the defendant's
breach of that duty was the proximate cause of plaintiff's injury,
and (4) the plaintiff was injured as a result.

See; Malone v. University Of Kansas Medical Center,220 Kan.
371,552 P.2d.885(1976) and Travis v. Bischoff,143 Kan.283,54 P.
2d.955(1936).

CERTAIN DUTIES AND OBLIGATIONS are imposed upon physicians
and hospitals by law. Breach of such duty by a physician i" is
malpractice," and an action in malpractice is one in tort, even
though there was a contract, express or implied, for employment.

16.

Similarly an action for damages against a hospital for negligence; i.e., for breach of duties imposed by law, sounds in tort. This is true though there may be a contract between parties.

In Noel v. Proud,189 Kan.6,8,11,367 P.2d.61(1961) "(As early as 1870 the Kansas Court recognized the general rule that a physician may contract specifically for a particular result. It is generally recognized that a physician or a surgeon may bind himself by express [*211] contract to perform a cure or to obtain specific results by treatment or an operation.)"

" As malpractice covers every which way in which a patient is injured through the deriliction of a doctor in his professional capacity, the approach, depending on the facts, can be through any of several familiar forms of actions. But no matter what the approach, it remains an action for malpratice, [*756] not one for deciet, contract, or anything else. A well recognized ground for recovery is where a physician represent that he has the skill to perform a certain operation when in fact he does not. This form of action requires the same elements of proff that an action of fraud requires, yet it could not be successfully disputed that as between the two it is an action for malpractice. "

PROBABLE CAUSE FOR CIVIL ACTION
MEDICAL MALPRACTICE TORT

See, Bartal v. Brower,268,195,993 P.2d.669(1999) Kan. Lexis 657, decided 11/12/99.
Probable Cause: for instituting a civil action exists when there is a reasonable ground for suspicion, supported by circumstances sufficiently strong themselves to warrant a cautious, or prudent, man in the belief that a party committed the act of which he is complaining.

Liability: For there to be liability of a doctor for non-disclosure, the unrevealed risk must materialize, and there must be harm to the patient, there must be a casual relationship between the physicians failure to adequately divulge information and damages to the patient.

17.

A casual connection exist between the physician and non-disclosure to the patient and the patients damage when, but only when, disclosure of significant risks incidental to treatment would have resulted in a decision against it. Whether the patient woild have refused the treatment or medical procedure had the physician made adequate disclosure is to be determined objectively. If adequate disclosure could reasonably be expected to have caused the patient to decline the treatment or procedure had the patient been informed of the kind of risk or danger which resulted in the harm, causation is shown but otherwise not, and the patients testimony is relevant on such issue, but should not be controlling.

See; Woolsey v. Lee,[No. 66,178] Court Of Appeals Kansas(1991), Kan.App.Lexis 684, decision 9/6.1991. Not designated for publication Reported as Table Case at 816 P.2d.1031(1991) Kan.App. Lexis 998. Overview:    Plaintiff's malpractice action could survive summary judgment without expert medical evidence because common sense was sufficient to determine whether operating on a conscious patient was negligent.

Plaintiff's medical malpractice action must prove negligence and that medical experts negligence caused adverse results.

Expert medical testimony is ordinarily required to establish negligence or lack of reasonable care on part of the physician or surgeon in care and treatment of patients. However, this rule ' does not give "-members of the medical care profession a monopoly on common sense, and the rule is limited to those matters clearly within the domain of medical science. Webb v. Lungstrum,223 Kan. 487,489,575 P.2d.22(1978). Thus, in a case where lack of care or proximate cause can be decided by an average citizen based on common knowledge, **expert testimony is unnecessary.** This exception to the general rule applies when the treatment or care of the patient has such bad results that lack of reasonable care would be obvious from the every day knowledge of persons generally. Common Knowledge Of Jurors. Savina v. Sterling Drug Inc.,247 Kan. 105,134,795 P.2d.915(1990).

18.

See, Amanda K. Bonin v. Donald D. Vannaman M.D.-[No.75,014]
Supreme Court of Kansas, 261 Kan.199,929 P.2d.754(1996) ...in
part as follows;

Under Kansas Law, most of an adults causes of action are
governed by a 2-year statute of limitations. K.S.A. 60-513(a).
The statutes of repose for adults vary, depending upon the type
of action at issue. For most causes of action, an adult has a
10-year repose period from the time of the act giving rise to the
cause of the action in which to file a claim. If the claim is not
filed within the 10-year period, then the claim is expired,
regardless of whether the plaintiff's injury has been discovered.
For a medical malpractice action, an adult has a 4-year statute of
repose period from the time of the act giving rise to the cause
of the action in which to file a claim. If the claim is not filed
within the 4-year repose period, then the claim is expired,
regardless of whether the plaintiff's injury has been discovered.
K.S.A. 60-513(c).

The court treats malpractice legislation as economic regulation
in which the rational basis test is applied. The rational basis
test is violated only if the statutory classification rest on
grounds wholly irrelevant to the acheivement of the state's
legitimate objective. The State legislature is presumed to have
acted within it's constitutional power, even if the statute results
in some inequality. Under the reasonable basis test, a statutory
discrimination will not be set aside if any state of facts
reasonably may be conceived to justify it. Leiker v. Gafford, 245
Kan.325,363-64,778 P.2d.823(1989).

Section 18 of the Kansas Constitution Bill of Rights provides
that all persons, for injuries suffered in person, reputation or
property, shall have remedy by due course of law, and justice be
administered without delay.

K.D.O.C. Personal Injury Claim, K.A.R. 44-16-104(a)  and
K.S.A. 75-52,138 states that " Any inmate in the custody of the
Kansas Secretary of Correction... prior to filing a claim or civil
action naming the State of Kansas, any political subdivision of
the State of Kansas, any public official, the S.O.C., the Warden,
the Sheriff, or an employee of the department of corrections or the

County; while such employee is engaged in the performance of
such employee's duty...shall have exhausted such inmate's
administrative remedies; established by rules and regulations
promulgated by the S.O.C. or by County resolutions; concerning
such civil action."

## TIMELINESS OF FILING

Plaintiff became reasonably aware of the re-injury in the
months of **July/August 2020**, only two years after the original
surgical procedure performed by the defendants on Nov. 02, 2018.
Plaintiff, to date, e.g. July 2022 is still not fully aware as
to the extent of the damages caused during the 11/02/18 surgery,
because he has not yet gained possession of the **May 6th, 2022**
Operative Report performed by _____ Gaston, M.D.

Irregardless, due to the Covid-19 disease pandemin, and
according to the Kansas Supreme Court Administrative Order
**2020-PR-016,** a complement to Administrtive Orders **2020-PR-13**
and **2020-PR-15,** on March 12, 2020 Kansas Governor Laura Kelly
declared a disaster emergency similar to that executed by the
then U.S. President Donald Trump on March 13, 2020. Such is a
substitute for **Senate Bill No. 102.** These executive and/or
Administrative Orders became effective on March 18th, 2020, as
signed by the Kan.Sup.Ct. Justice Marla Luckert. These
Administrative Orders suspended al non-emergency Court Hearings
until lifted or removed by the Kansas Governor or U.S. President.
Therefore, plaintiff's filing is well within the prescribed and
statutory time limitations..

## RELIEFS REQUESTED

Plaintiff asks this Court to grant him this petition, jury
trial, summons upon defendants; enforcement of monetary/
compensatory/punative/exemplary damage awards as found
equitable by the jury or this Court, and all other relative
motions pertaining to his civil action, i.e. tort claim.

RESPECTFULLY SUBMITTED
Robert D. Blaurock

CERTIFICATE OF SERVICE

This is to certify that on this 26th day of Sept. 2022, I

forwarded to the Clerk of the U.S.D.Ct., Dist. of Kansas, by

means of E-Filing a copy of Plaintiff's Request For Permission To

Amend the Pleading/Petition, and that the Court and defendants

have received copy of the same by U.S.P.S. Mail, first class,

postage paid.

Clerk of the Court
U.S.D.Ct., Dist. of KS.
at Wichita, Kansas
Room 204
401 N. Market Street
Wichita, Kansas 67202-2096

Southwind Surgical Group
2500 Canterbury Dr., Suite 202
Hays, Kansas 67601
(785)-623-5945 Tele.
(785)-623-5949 Fax.
by and through their counsel
of Record Michael K. Brown
Reed Smith LLP.
355 South Grand Ave.,
Suite 2900
Los Angeles, CA. 90071
1-(213)-457-8000 Tele.
1-(213)-457-8080 Fax.

Centurion of Kansas,LLC.
a.k.a Centurion Managed Care of
Virginia, LLC.
1593 SpringHill Rd., Suite 600
Vienna, Virginia 22182
by and through counsel
Mr.Sam Bennett, Atty.#26695 of
Norris Keplinger Hicks & Welder,LLC.
11551 Ash Street, Suite 200
Leawood, Kansas 66211
(913)-663-2000 Tele, 623-2006 Fax.

Corizon Health,LLC.
C.T. Corporation
300 Montvue Rd.
Knoxville, TN. 37919-5546

C.R. Bard Inc.et.al/Davol Inc.
100 Crossings Blvd.
Warwick, R.I. 02886
1-800-556-6275
by and through counsel
Kara T. Stubbs, Atty.#15805
Baker Sterchi Cowden & Rice,LLC.
2400 Pershing Rd., Suite 500
Kansas City, Mo. 64108-2533
(816)-471-2121 Tele.
(816)-471-0288 Fax.

Robert D. Blaurock
# 86516
E.D.C.F.
1737 S.E. 54 Hwy.
P.O. Box 311
El Dorado, KS. 67042

Casey L. Walker, Atty.#25965
Simpson Logback Lynch Norris,PLA.
7400 W. 110th St., Suite 600
Overland Park, KS. 66210
(913)-342-2500 Tele.
(913)-342-0603 Fax.
For Brandon S. Cunningham, M.D. and
Alaina D. Dressler, P.A.

Sworn to before me on this 26th day of Sept. 2022

Notary Public

Submitted under the penalty of perjury, K.S.A. 53-601 and/or
28 U.S.C. § 1746 on the date indicated/mailed. No Notary Available.

21.