IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT WICHITA

| | |
|---|---|
| ROBERT BLAUROCK, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| SOUTHWIND SURGICAL GROUP, BRANDON S. CUNNINGHAM, M.D.; ALAINA D. DRESSLER, P.A.; BARD DAVOL INC.; CORIZON LLC., CORIZON INC.; CENTURION HEALTH CARE PROVIDER/K.D.O.C., | ) ) ) ) ) ) ) )  Case No: 6:22-cv-01196-JWB-GEB |
| Defendants. | ) ) |

**DEFENDANT C. R. BARD, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO STAY ALL PROCEEDINGS PENDING TRANSFER TO
<u>MULTIDISTRICT LITIGATION</u>**

Defendant C. R. Bard, Inc. submits this Memorandum of Law in support of its Motion to Stay All Proceedings Pending Transfer to Multidistrict Litigation.

### I. NATURE OF THE MATTER BEFORE THE COURT

This is a medical device product liability case brought by Plaintiff Robert Blaurock ("Plaintiff") who allegedly was injured due to surgical procedures he underwent which included being implanted with a hernia repair device made by Defendant C. R. Bard, Inc., erroneously sued as Bard Davol Inc. ("Bard"). Bard is currently defending more than 17,000 federal cases involving its hernia repair devices and those cases are being coordinated in MDL No. 2846, *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, Case No. 2:18-md-2846-EAS-KAJ ("MDL 2846") (S.D. Ohio). This case alleges the same defects and complications that the other cases in MDL 2846 allege. Instead of allowing this case to be transferred to MDL

2846—where Plaintiff will receive the benefits of a coordinated proceeding where this case can most efficiently be resolved along with numerous other cases raising similar issues—Plaintiff has moved to remand this case to state court, arguing that the product liability claims against Bard are not fraudulently joined with the medical malpractice claims against Plaintiff's implanting surgeons medical facilities, and provider of healthcare services for incarcerated individuals. (ECF No. 11).

In addition to Bard, Plaintiff sued numerous healthcare providers, including the hospitals, physicians, nurses—and services provider for incarcerated individuals (collectively, "Healthcare Defendants")—along with Bard.[1] However, there are a number of reasons why this Court should grant Bard's motion to stay, and allow transfer of this action to MDL 2846.

***First***, the proper course of action is to stay the case pending a decision by the Judicial Panel on Multidistrict Litigation ("JPML"). The JPML has repeatedly ruled that the pendency of remand motion is not a valid basis upon which to vacate a Conditional Transfer Order.

***Second***, considerations of judicial economy, efficiency, and consistency of results weigh in favor of a stay, to allow the MDL Court to address recurring jurisdictional issues, such as fraudulent joinder. The MDL Court is particularly suited to deal with the issues this case presents, as it recently addressed a similar concern in another case involving an incarcerated *pro se* plaintiff, severing and remanding medical malpractice and civil rights claims, and retaining jurisdiction over product liability claims in *Davol, Inc. v. Cal. Dep't of Corrs.*, No. 2:18-md-2846, 2019 U.S. Dist. LEXIS 33227, at *59 (S.D. Ohio Feb. 28, 2019). Further, Bard will be prejudiced absent any stay, whereas Plaintiff will not suffer prejudice because he can renew his remand motion with the MDL

---

[1] Plaintiff brought suit in the District Court of Butler County, Kansas against Bard, and the Healthcare Defendants, including Southwind Surgical Group, Brandon Cunningham, M.D. ("Dr. Cunningham"), Alaina Dressler P.A. ("P.A. Dressler"), Corizon LLC, Corizon Inc.,, and Centurion of Kansas, LLC (sued as "Centurion Health Care Provider/K.D.O.C."), ("Centurion") the facilities, physicians, and. facilities and the healthcare service provider for incarcerated individuals who assisted in Plaintiff's hernia repair procedure. (*See* ECF No. 1, Ex. 2, Pet.).

Court, which has the greatest institutional knowledge about alleged defects related to Bard hernia repair devices. Additionally, Plaintiff has already moved for a stay to allow receipt of his operative report, and, therefore, cannot argue Bard's request will result in prejudice or delay. (ECF No. 15, Plaintiff's Motion to Stay).

Further, if the Court declines to stay the case, then it should find that Bard's removal was procedurally proper, because the Healthcare Defendants were fraudulently joined, and their purported Kansas citizenship should be disregarded for purposes of removal for the Reasons explained in Bard's Opposition to Plaintiff's Motion to Remand.[2] Therefore, for the reasons stated above, this Court should grant Bard's motion to facilitate transfer of this action to MDL 2846 for coordination with other similar cases.

## II.     RELEVANT FACTUAL BACKGROUND

**A.     MDL 2846.**

On August 2, 2018, the JPML issued a transfer order establishing MDL 2846, titled, *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, Case No. 2:18-md-2846-EAS-KAJ ("MDL-2846") (S.D. OH.) (a true and correct copy is attached as Exhibit 1 to the Declaration of Kara T. Stubbs ("Stubbs Decl.")). Pursuant to 28 U.S.C. § 1407, the Transfer Order directed that product liability cases involving Bard's hernia repair products made, at least in part, of polypropylene be transferred for coordinated pretrial proceedings in the United States District Court for the Southern District of Ohio before the Honorable Edmund A. Sargus. *See id.* at p. 2. In its Transfer Order, the JPML ruled that:

---

[2] If this Court does not stay this action, and does not rule that the Healthcare Defendants are fraudulently joined, it should, alternatively, sever the medical malpractice claims and allow transfer of the product liability claims to MDL 2846. *See generally* Bard's concurrently filed Motion To Sever and Remand Plaintiff's Medical Malpractice Claims Against the Healthcare Defendants.

> On the basis of the papers filed and hearing session held, we find that these actions involve common questions of fact, and that centralization in the Southern District of Ohio will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All of the actions share common factual questions arising out of allegations that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions, damage to organs, inflammatory and allergic responses, foreign body rejection, migration of the mesh, and infections. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.

*Id*. Since the JPML issued its initial transfer order on August 2, 2018, approximately 17,600 cases involving Bard's hernia mesh products have been coordinated into MDL 2846. (Stubbs Decl. at ¶ 2, Ex. 1).

**B.    This Action.**

On July 28, 2022, Plaintiff Robert Blaurock commenced this action, entitled *Robert Blaurock v. Southwind Surgical Group et al.,* Case No. BU-2022-CV-000173, in the Kansas District Court, Butler County. (Stubbs Decl. at ¶ 3). Bard was served with the Petition on August 22, 2022. (*Id.* ¶ 4). On August 29, 2022, Bard timely and properly removed this action to this Court on based on diversity of citizenship under 28 U.S.C. § 1332. (*Id*. at ¶ 5).

There is no dispute that this action falls squarely within the scope of the JPML's Transfer Order, thereby warranting its inclusion in coordinated pretrial proceedings in the Southern District of Ohio. Specifically, this case, like other Bard hernia repair device cases in MDL 2846, focuses on the alleged safety risks associated with Bard's hernia repair devices, and whether Bard knew of alleged risks but failed to disclose them to the medical community and consumers. (*See* Transfer Order, Stubbs Decl., Ex. 1 at ¶ 2). For example, Plaintiff's Petition alleges that Plaintiff was implanted with a "Bard Mesh Perfix Plug" which was purportedly defective, and "[tore] loose; causing plaintiff internal pain and suffering." (Pet. at ¶ 3). The Petition further asserts that Plaintiff suffers from an "internal burning/stinging sensation," and "lives in fear" that his current Perfix Plug hernia repair device "will also tear loose internally; and necessitate another repair surgery."

(*Id.* at ¶¶ 3, 10). Moreover, the Petition alleges Bard manufactured a defective product," and claims "Defendants" should have "foreseen a probability of mesh failure." (*Id.*, at ¶ 3(b)(c)). The Petition further asserts that Bard was responsible for manufacturing and designing the Perfix Plug hernia repair device. *Id.* Bard provided timely notice to the JPML of this action pursuant to Rule 7.1 of the Rules of Procedure of the JPML on August 31, 2022. (Stubbs Decl. at ¶ 6). The JPML issued a Conditional Transfer Order ("CTO"), CTO-98, conditionally transferring this action to MDL 2846 on September 7, 2022. (*Id.* at ¶ 7). Plaintiff filed a motion to remand titled "Plaintiff's Objection to Defendant's Notice of Removal" on September 14, 2022. (*Id.* at ¶ 8). Plaintiff filed a notice of opposition to CTO-98 on September 14, 2022. (*Id.* at ¶ 9). Defendants Dr. Cunningham and P. A. Dressler filed a notice of opposition to CTO-98 on September 14, 2022. (*Id.* at ¶ 10). Defendant Centurion of Kansas, LLC filed a notice of opposition to the CTO on September 15, 2022. (*Id.* at ¶ 11). However, the JPML set a briefing schedule, and the parties will file briefs to allow the Panel to resolve the issue of MDL transfer. (*Id.* at ¶ 12). The Panel has previously transferred thousands of similar cases to the MDL, and only two other plaintiffs have objected to transfer to MDL 2846.[3] Further, the JPML has repeatedly ruled that, notwithstanding any objection to jurisdiction, related cases should be transferred to an MDL. *See* Transfer Order, MDL No. 2187, *In re C. R. Bard, Inc. Pelvic Repair Prods. Liab. Litig*. (J.P.M.L. June 11, 2013) (transferring cases for consolidation finding that "[t]he Panel often has held that jurisdictional issues do not present an impediment to transfer") (a true and correct copy is attached as Exhibit 2 to Stubbs Decl. at ¶ 13).

---

[3] Including Plaintiff's notice, there have been a total of six notices of opposition to conditional transfer orders filed since MDL 2846's centralization, but two of those were withdrawn, and plaintiffs failed to file motions to vacate in a third case.

### III.     STATEMENT OF QUESTIONS PRESENTED

1.     Should a stay be entered to facilitate transfer of this action to MDL 2846 for coordination with other similar cases?

### III.     ARGUMENT

**A.     The JPML Has Repeatedly Ruled That Motions To Remand Do Not Preclude Transfer.**

Plaintiff will likely claim that the motion to remand militates against transfer of this action to MDL 2846.  Not so.  The JPML has consistently held that a pending remand motion is not a reason to preclude transfer of a case to an MDL. *See In re Xarelto* MDL, the Panel explained that, "[j]urisdictional issues do not present an impediment to transfer, as plaintiffs can present these arguments to the transferee judge."  *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2017 U.S. Dist. LEXIS 59098, at *2 (J.P.M.L. Apr. 5, 2017); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2378, 2017 U.S. Dist. LEXIS 116026 (J.P.M.L. Feb. 2, 2017) ("Plaintiffs principally argue that transfer is inappropriate because their actions were improperly removed from state court. These arguments are not convincing because the pendency of jurisdictional objections is not, as a general matter, a sufficient reason to delay or deny transfer.").  Here, where the Panel has already set a briefing schedule and will rule on the transfer of this action, the appropriate outcome is for this Court to stay all further proceedings in this case pending its likely transfer to MDL 2846.  Further, Plaintiff has already moved for a stay pending receipt of his operative report, and, therefore he cannot claim any delay or prejudice as a result of Bard's request.  (*See* ECF No. 15, Plaintiff's Motion to Stay).

**B.     Judicial Economy And Efficiency Support Staying This Action.**

District courts routinely exercise their authority to stay in action prior to transfer to MDL, and the authority of a federal court to stay proceedings is well-established.  *See Landis v. North*

*Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) ("A district court has the inherent power to stay its proceedings."); *Asmann v. Dairy Farmers of Am., Inc.*, Civil Action No. 12-1060-KHV/DJW, 2012 WL 1136865, at *4-5 (D. Kan. Apr. 4, 2012).

A stay pending a transfer decision by the JPML is particularly appropriate because it serves the primary purposes of consolidation under 28 U.S.C. § 1407: "to eliminate duplicative discovery, prevent inconsistent pretrial rulings, . . . and conserve the resources of the parties, their counsel, and the judiciary." *In re California Retail Natural Gas & Elec. Antitrust Litig.*, 150 F. Supp. 2d 1383, 1384 (J.P.M.L. 2001); *City of Alexandria v. Purdue Pharma L.P.*, 290 F. Supp. 3d 1375, 1379 (E.D. Va. Jan. 30, 2019) ("deferring to the MDL court for resolution on the motion to remand provides the opportunity for uniformity . . . , which is the purpose of the MDL system," because "[h]aving a single judge rule on the remand issues guarantees consistent rulings and prevents duplicative judicial efforts, promoting judicial efficiency."). For that reason, "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved." *Rivers*, 980 F. Supp. at 1362; *see also Knearem v. Bayer Corp.*, No. 02-2096-CM, 2002 U.S. Dist. LEXIS 9523, at *3-4 (D. Kan. May 7, 2002) (staying action pending transfer to MDL ruling, "judicial economy is best served by staying this litigation pending a resolution of the conditional order to transfer," because it "avoids the possibility of inconsistent pretrial rulings"). Moreover, the leading authority on managing complex litigation, the Manual for Complex Litigation published by the Federal Judicial Center, advises that "[a] stay pending the Panel's

decision [on transfer] can increase efficiency and consistency, particularly when the [potential] transferor court believes that a transfer order is likely and when [any] pending motions raise issues likely to be raised in other cases as well." Manual for Complex Litigation (Fourth) § 22.35 (2004). It is also the JPML's current opinion that "the transferee judge is in the best position to determine jurisdictional issues." *See* U.S. Judicial Panel on Multidistrict Litig., Fed. Judicial Ctr., Ten Steps to Better Case Mgmt.: A Guide for Multidistrict Litig. Transferee Judges, p. 5 (available at https://www.fjc.gov/content/ten-steps-better-case-management-guide-multidistrict-litigation-transferee-judges-second) (last visited on September 21, 2022). In accordance with these authorities, this Court should stay this action pending the decision by the JPML to transfer this case to MDL 2846.

### 1. The Relevant Factors Call For A Stay In This Case.

Courts analyze three factors when determining whether to issue a stay of proceedings pending transfer to multidistrict proceedings: (1) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact coordinated; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party. *Rivers*, 980 F. Supp. at 1360. Applying these standards, district courts routinely grant stays pending transfer to multidistrict litigation. *See*, *e.g.*, *Sanchez v. DePuy Orthopedics, Inc.*, No. 2:11-cv-07867-JHN-SHx, 2011 WL 7092289, at *2 (C.D. Cal. Nov. 21, 2011) (granting defendants' motion for stay to allow MDL court to consider issues of fraudulent joinder because such stay promoted judicial economy and would not prejudice plaintiffs); *C.A. by Allen v. Pfizer, Inc.*, Case No: C 13-4087 SBA, 2013 WL 6091766, at *2 (N.D. Cal. Nov. 19, 2013) (similar).

This Court should follow suit, and stay this case pending transfer to MDL 2846 to preserve the resources of the parties, counsel, and the judiciary, and to avoid prejudice to Bard with inconsistent rulings and duplicative discovery obligations.

### a. A Stay Pending Transfer Would Conserve Judicial Resources.

Granting a stay of proceedings here will promote judicial economy. The purpose of multidistrict litigation is to coordinate pretrial management of actions sharing common facts in a just and efficient manner. *See* 28 U.S.C. § 1407(a). In staying cases such as this one, district courts recognize that it is a poor use of judicial resources to familiarize themselves with the intricacies of cases that will be coordinated for pretrial management before a transferee judge. *See Rivers*, 980 F. Supp. at 1360-61 ("[A]ny efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation"); *Lyon v. Depuy Orthopaedics, Inc.*, No. 19-cv-05270-PJH, 2019 U.S. Dist. LEXIS 173967, at *6-8 (N.D. Cal. Oct. 7, 2019) (granting motion to stay "allowing the MDL court the opportunity to adjudicate plaintiff's motion to remand. . . [to] maximize judicial efficiency" because "that court is best situated to adjudicate plaintiff's motion to remand in a way that would avoid inconsistent results"). As one court stated in granting a stay, "[i]f the MDL Motion is granted, all of the Court's time, energy, and acquired knowledge regarding this action and its pretrial procedures will be wasted." *U.S. Bank v. Royan Indem. Co.*, No. Civ. A. 3:02-CV-0853-P, 2002 WL 31114069, at *2 (N.D. Tex. Sept. 23, 2002).

Where, as here, the JPML has already coordinated thousands of similar Bard hernia repair device product liability actions, issued a CTO to facilitate coordination, and set a briefing schedule to determine the propriety of transfer, there is no question that a stay of this case would preserve judicial resources. *See*, *e.g.*, *Silber v. Davol et al.*, No. 1:18-cv-00479-DAD, 2018 U.S. Dist. LEXIS 101708, at *2 (E. D. Cal. June 18, 2018) ("Cases such as this are frequently stayed pending the outcome of pending transfer petitions before the MDL panel"); *Sanchez*, 2011 WL 7092289, at *2 (similar).

To begin, any pretrial management efforts put forth by this Court will be overtaken by Judge Sargus's pretrial orders once the case is transferred. Similarly, any effort by the parties in these proceedings on discovery or motion practice will be redundant to MDL proceedings. This case involves a Bard hernia repair device similar to those at issue in many of the cases in the MDL, and although each case presents plaintiff-specific issues, the benefits of coordinated pretrial proceedings would quickly diminish if cases are not all included. Moreover, Plaintiff is ideally positioned to coordinate his case with pretrial proceedings in the other similarly situated actions. (*See* Stubbs Decl. at ¶ 2). This case will likely soon join those in MDL 2846, and this Court should not expend resources in the meantime.

### b. Bard Will Be Prejudiced Absent A Stay, Whereas Plaintiff Will Suffer No Prejudice If A Stay Pending Transfer To MDL 2846 Is Ordered.

The prejudice to Bard absent a stay far outweighs any minimal prejudice to Plaintiff if a stay is granted. *C.A. by Allen*, 2013 WL 6091766, at *2 ("Defendants may suffer hardship and inequity if a stay is not imposed. If Plaintiff files a motion for remand and this Court prematurely adjudicates such motion, Defendants may be forced to re-litigate issues before the MDL Panel or in state court. Finally, there is no evidence that Plaintiffs will be unduly prejudiced or inconvenienced by a stay."); *Yuan v. Lewey*, No. C 13-04010 WHA, 2013 WL 5954900, at *1 (N.D. Cal. Oct. 28, 2013) (similar).

Currently, there are thousands of Bard hernia repair product liability actions coordinated in MDL 2846. (Stubbs Decl. at ¶ 2). If individual district courts allowed cases to proceed in the short window of time between the filing or removal of a case and its ultimate transfer to the MDL, Bard would be forced to re-argue the same issues in literally thousands of courts and would be denied the full benefit of the highly organized process already underway in the MDL proceeding.

As one District Court succinctly put it in granting a stay and deferring ruling on the plaintiff's motion to remand:

> [T]he court finds that [Defendant] will face significant hardship if its motion to stay the proceedings is not granted.  If this court denies plaintiffs' motion, and the case is later transferred, the MDL court could revisit the issue, thus forcing [Defendant] to relitigate it. . . . If, on the other hand, this court grants the remand motion and the MDL later decides that removal in similar cases was proper, [Defendant] would be prejudiced by having to litigate the case in state court instead of before the MDL. . . . Should this court deny the motion to stay, [Defendant] would be left with two unfavorable alternatives that expose it to a significant risk of duplicative litigation and prejudice.

*Jones v. Bristol-Myers Squibb Co.*, No. C 13-2415 PJH, 2013 WL 3388659, at *3 (N.D. Cal. Jul. 8, 2013).

Additionally, the prospect of parallel proceedings in multiple different courts puts Bard at risk of potentially inconsistent rulings, and pretrial and discovery obligations.  *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("Centralization under [28 U.S.C. § 1407] is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."); *Levy v. Volkswagen Akti [sic] Engesellschaft*, No. 1:15-cv-01179-RJ-LF, 2016 WL 8261798 (D.N.M. Feb. 22, 2016) (granting stay motion because, inter alia, "if the Court denies a stay, [defendant] will bear the burden of duplicative litigation in different courts and there is a possibility of conflicting decisions" and granting stay motion "would conserve judicial resources").

By comparison, the potential prejudice to Plaintiff if the action is stayed is virtually non-existent.  Plaintiff has expended limited resources to date, as this action is still in its infancy.  Whatever limited proceedings that could take place in the next several weeks will be wholly subsumed and superseded by the MDL.  Moreover, Plaintiff can raise any issues, including remand, in front of the MDL Court once this case is transferred.

As previously mentioned, Judge Sargus has already demonstrated that he will promptly address issues presented by transferred cases, having issued numerous case management orders, including one allowing for direct filing of cases in the MDL. (Stubbs Decl. at ¶ 14). Further, Judge Sargus is uniquely suited to decide matters that will impact Plaintiff's action, including jurisdictional disputes, such as fraudulent joinder. In fact, in the only instance that the MDL Court has previously addressed the issue of joinder of product liability and medical malpractice claims, Judge Sargus recommended—and the Panel agreed—that the MDL Court should retain jurisdiction over Bard and the product liability claims, and remand the claims against non-hernia mesh defendants in a similar action involving a *pro se* plaintiff. *Cal. Dep't of Corrs.*, 2019 U.S. Dist. 2019 U.S. Dist. LEXIS 33227, at *59; *In re Davol, Inc.*, No. 2846, 2019 U.S. Dist. LEXIS 40586, at *2 (J.P.M.L. Mar. 13, 2019) (severing and remanding non-product liability claims).

In similar circumstances, courts granting stays have agreed that staying proceedings pending MDL transfer does not cause any prejudice to the plaintiffs. Plaintiff here is no different. *See C.A. by Allen*, 2013 WL 6091766, at *2 ("[T]here is no evidence that Plaintiffs will be unduly prejudiced or inconvenienced by a stay."); *Yuan*, 2013 WL 5954900, at *1.

**C.   There Is No Jurisdictional Bar To Granting A Stay In This Case.**

This Court can, and should, grant Bard's motion to stay, even though Plaintiff has filed a motion to remand, because Plaintiff can raise the issue of federal subject matter jurisdiction, along with other pretrial issues, in the MDL. In fact, precisely "***because jurisdiction is a threshold issue and the MDL court has many cases with pending motions to remand, the MDL court will necessarily need to rule on the motions to remand.***" *Pierce v. Frink*, No. 2:17-1731 WBS DB, 2017 U.S. Dist. LEXIS 180605, at *9 (E.D. Cal. Oct. 31, 2017) (emphasis added). Likewise, the JPML's position is that "the transferee judge is in the best position to determine jurisdictional issues." *See* JPML, Ten Steps to Better Case Mgmt.: A

- 12 -

Guide for Multidistrict Litig. Transferee Judges, p. 5 (available at https://www.fjc.gov/content/ten-steps-better-case-management-guide-multidistrict-litigation-transferee-judges-second) (last visited on September 21, 2022). Both courts and the JPML therefore agree that courts should stay proceedings where to further judicial economy, even where the plaintiff has filed a motion to remand. *Jones v. Sanofi US Servs.*, No. CV 18-8268-R, 2018 U.S. Dist. LEXIS 223727, at *5 (C.D. Cal. Nov. 19, 2018) (staying action, denying remand because "jurisdictional issues involve[ing] difficult questions of fact that have not been definitively resolved," because fraudulent joinder was "similar to issues raised in cases that have already been transferred or are likely to be transferred to the MDL").

Once Plaintiff's claim is transferred to the MDL, he will be able to refile his remand motion in front of Judge Sargus, thereby mitigating any minimal prejudice Plaintiff could hypothetically experience by a stay. *See McCrery v. Merck & Co.*, Civ. No. 04-2576 WQH (WMc), 2005 WL 6124182, at *3 (S.D. Cal. Mar. 5. 2005) (granting stay motion pending JPML's transfer decision and denying remand, finding that "neither party would be prejudiced by granting the Motion").

While plaintiffs often argue that a motion to remand precludes a stay—which Plaintiff will likely claim here—the law forecloses such an argument even if plaintiff does request remand. As the Court in *Freitas v. McKesson Corporation* bluntly stated, "Plaintiffs' contention that the Court should not address the Motion to Stay without first deciding their Motion to Remand is misguided." No. C 11-05967 JW, 2012 WL 161211, at *1 (N.D. Cal. Jan. 10, 2012). A stay is particularly needed where—as here—a case presents complex issues already raised in the MDL, including issues of subject matter jurisdiction. *See Lyon*, 2019 U.S. Dist. LEXIS 173967, at *7-8 (granting motion to stay, ruling that "the MDL court likely maintains the greatest institutional knowledge" regarding the underlying litigation, and, "[a]s a result, the MDL court would likely be

the most efficient forum to decide plaintiff's motion to remand"). As such, where a jurisdictional issue such as fraudulent joinder is "similar to issues raised in cases that have already been transferred or are likely to be transferred to the MDL," the court should stay the action. *Jones*, 2018 U.S. Dist. LEXIS 223727, at *5 (granting stay and denying remand, recognizing that question of fraudulent joinder was "similar to issues raised in cases that have already been transferred or are likely to be transferred to the MDL").

Judge Sargus, as the MDL Judge presiding over these cases, is best positioned to rule on issues of subject matter jurisdiction, including issues of fraudulent joinder of healthcare providers, which has been raised in numerous cases already transferred to the MDL. As this Court is likely aware, concerns regarding subject matter jurisdiction are common in drug and medical device litigation, and that situation and the jurisdictional disputes that it creates have become a recurring issue with which Judge Sargus is familiar. *Cal. Dep't of Corrs.*, No. 2:18-md-2846, 2019 U.S. Dist. LEXIS 33227, at *59. Therefore, this Court should stay the action to allow Judge Sargus to address this question to preserve consistency and uniformity, and avoid the risk of conflicting decisions.[4]

## IV. CONCLUSION

For the foregoing reasons, Defendant C. R. Bard, Inc. respectfully requests that the Court stay all proceedings pending a ruling on transfer of this case to MDL 2846 by the Judicial Panel on Multidistrict Litigation.

---

[4] Similarly, numerous courts have ruled that plaintiffs improperly joined malpractice claims against healthcare providers with product liability claims against prescription product manufacturers. *See, e.g.*, *In Re Stryker Rejuvenate & ABG II Hip Implant Products Liab. Litig.*, No. CIV. 13-1811 DWF/FLN, 2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013) (denying remand, severing claims against healthcare providers, and noting that joinder was prohibited even under California's liberal joinder rules) (citing cases finding improper joinder in similar circumstances). If this Court does not grant Bard's motion to stay, and does not rule that the Healthcare Defendants are fraudulently joined, it should, in the alternative, sever the medical malpractice claims and allow transfer of the product liability claims to MDL 2846. *See generally* Bard's concurrently filed Motion To Sever and Remand Plaintiff's Medical Malpractice Claims Against the Healthcare Defendants.

Dated this 4th day of October, 2022.

                                        Respectfully submitted,

                                        */s/ Kara T. Stubbs*
                                        Kara T. Stubbs            KS # 15805
                                        BAKER STERCHI COWDEN & RICE LLC
                                        2400 Pershing Road, Suite 500
                                        Kansas City, MO 64108
                                        Telephone:    (816) 471-2121
                                        Facsimile:     (816) 472-0288
                                        stubbs@bakersterchi.com

                                        **ATTORNEY FOR DEFENDANT**
                                        **C. R. BARD, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on the 4th day of October, 2022, a true and correct copy of Defendant C. R. Bard, Inc.'s Memorandum In Support of Bard's Motion to Stay All Proceedings Pending Transfer to Multidistrict Litigation was served through CM/ECF on all counsel or parties via the Court's filing system and/or by depositing copies of all documents in the United States mail.

    Robert D. Blaurock        #86516
    El Dorado Correctional Facility
    1737 S.E. 54 HWY.
    P.O. Box 311
    El Dorado, KS. 67042

    **PLAINTIFF**

                                          */s/ Kara T. Stubbs*