IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT WICHITA

| | |
|---|---|
| ROBERT BLAUROCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No: 6:22-cv-01196-JWB-GEB |
| | ) |
| SOUTHWIND SURGICAL GROUP, | ) |
| BRANDON S. CUNNINGHAM, M.D.; | ) |
| ALAINA D. DRESSLER, P.A:; BARD | ) |
| DAVOL INC.; CORIZON LLC., CORIZON | ) |
| INC.; CENTURION HEALTH CARE | ) |
| PROVIDER/K.D.O.C., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT C. R. BARD, INC.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

Defendant C. R. Bard, Inc. submits this Memorandum of Law in Opposition to Plaintiff's Motion to Remand.

## I.   NATURE OF THE MATTER BEFORE THE COURT

This is a medical device product liability case brought by Plaintiff Robert Blaurock ("Plaintiff") who allegedly was injured due to surgical procedures he underwent which included being implanted with a hernia repair device made by Defendant C. R. Bard, Inc., erroneously sued as Bard Davol Inc. ("Bard"). Bard is currently defending more than 17,000 federal cases involving its hernia repair devices and those cases are being coordinated in MDL No. 2846, *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, Case No. 2:18-md-2846-EAS-KAJ ("MDL 2846") (S.D. Ohio). This case alleges the same defects and complications that the other cases in MDL 2846 allege. Instead of allowing this case to be transferred to MDL 2846—where Plaintiff will receive the benefits of a coordinated proceeding where this case can

most efficiently be resolved along with numerous other cases raising similar issues—Plaintiff has moved to remand this case to state court, arguing that the product liability claims against Bard are not fraudulently joined with the medical malpractice claims against Plaintiff's implanting surgeons medical facilities, and provider of healthcare services for incarcerated individuals. (ECF No. 11). Judge Edmund Sargus, who is overseeing MDL 2846, has readily addressed cases involving claims against non-diverse healthcare providers and Bard, and has dismissed and/or severed claims against the healthcare providers to maintain jurisdiction over the product liability claims against Bard. In fact, the MDL Court recently granted a motion to dismiss for failure to state a claim in favor of a healthcare facility who implanted a Bard hernia repair device, and denied that plaintiff's suggestion of remand. *See Leto v. C.R. Bard, Inc.*, No. 2:18-md-2846, 2022 U.S. Dist. LEXIS 181221, at *212 (S.D. Ohio Oct. 3, 2022). In addition, Judge Sargus addressed a similar concern in another case involving an incarcerated *pro se* plaintiff, severing and remanding medical malpractice and civil rights claims, and retaining jurisdiction over product liability claims in *Davol, Inc. v. Cal. Dep't of Corrs.*, No. 2:18-md-2846, 2019 U.S. Dist. LEXIS 33227, at *59 (S.D. Ohio Feb. 28, 2019)..

Nonetheless, in an apparent attempt to avoid diversity jurisdiction, Plaintiff sued numerous healthcare providers, including the hospitals, physicians, nurses—and services provider for incarcerated individuals (collectively, "Healthcare Defendants")—along with Bard.[1] Bard has concurrently filed a motion to stay, enumerating the reasons why this Court should grant Bard's motion to stay, and allow transfer of this action to MDL 2846. However, if the Court declines to

---

[1] Plaintiff brought suit in Kansas District Court, Butler County, against Bard, and the Healthcare Defendants, including Southwind Surgical Group, Brandon Cunningham, M.D. ("Dr. Cunningham"), Alaina Dressler P.A. ("P.A. Dressler"), Corizon LLC, Corizon Inc.,, and Centurion of Kansas, LLC (sued as "Centurion Health Care Provider/K.D.O.C."), ("Centurion") the facilities, physicians, and. facilities and the healthcare service provider for incarcerated individuals who assisted in Plaintiff's hernia repair procedure. (*See* ECF No. 1, Ex. 2, Pet.).

stay the case, then it should find that Bard's removal was procedurally proper, because the Healthcare Defendants were fraudulently joined, and their purported Kansas citizenship should be disregarded for purposes of removal for the following reasons.

*First*, Plaintiff did not satisfy Kansas medical negligence statutory requirements, by failing to provide an expert certification supporting any such claims.[2]

*Second*, the Healthcare Defendants cannot be liable under product liability theories for implanting an allegedly defective medical device because they are providers of healthcare services, and are not engaged in the business of selling medical devices. The MDL Court recently dismissed claims on precisely this basis, ruling that the healthcare provider "cannot be held liable under a theory of strict products liability for its use of [a Bard hernia repair device]," and could not be considered ""a seller of the [device which was used] "in the course of its primary function of providing medical services."" *See Leto*, 2022 U.S. Dist. LEXIS 181221, at *205 (citation omitted).

*Third*, Plaintiff's allegations against Bard and the Healthcare Defendants are contradictory, because the latter are fraudulently joined. Plaintiff's First Amended Petition hinges on the design, manufacture, warnings, distribution, and marketing of a Bard hernia repair device, events and conduct with which Plaintiff does not—and cannot—allege the Healthcare Defendants were involved in any manner.[3]

---

[2] In addition to the reasons Bard provides herein, explaining why Plaintiff cannot state any viable Kansas law claims against the Healthcare Defendants, Plaintiff's medical malpractice claims against certain Healthcare Defendants fail for the additional explanations stated in their motions to dismiss. (*See* ECF Nos. 9, Centurion's Motion to Dismiss; ECF No. 12, Dr. Cunningham and PA. Dressler's Motion to Dismiss.)

[3] If this Court does not stay this action, and does not rule that the Healthcare Defendants are fraudulently joined, it should, alternatively, sever the medical malpractice claims and allow transfer of the product liability claims to MDL 2846. *See generally* ECF No. 23-25, Bard's Motion To Sever and Remand Plaintiff's Medical Malpractice Claims Against the Healthcare Defendants.

Therefore, for the reasons stated above, this Court should decline to rule on Plaintiff's motion to remand to facilitate transfer of this action to MDL 2846 for coordination with other similar cases. If the Court decides to rule on Plaintiff's motion for remand, it should be denied.

## II.  RELEVANT FACTUAL BACKGROUND

### A.  MDL 2846.

On August 2, 2018, the JPML issued a transfer order establishing MDL 2846, titled, *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, Case No. 2:18-md-2846-EAS-KAJ ("MDL-2846") (S.D. OH.) (a true and correct copy is attached as Exhibit A to the Declaration of Kara T. Stubbs in Support of Bard's Opposition to Plaintiff's Motion to Remand ("Stubbs Decl."), which is attached as Exhibit 1). Pursuant to 28 U.S.C. § 1407, the Transfer Order directed that product liability cases involving Bard's hernia repair products made, at least in part, of polypropylene be transferred for coordinated pretrial proceedings in the United States District Court for the Southern District of Ohio before the Honorable Edmund A. Sargus. *See id.* at p. 2. Since the JPML issued its initial transfer order on August 2, 2018, approximately 17,600 cases involving Bard's hernia mesh products have been coordinated into MDL 2846. (Stubbs Decl. at ¶ 2, Ex. 1). Interestingly, the JPML recently denied similar arguments made by the Plaintiff and Heath Case Defendants here in another case where a motion for remand was pending and opposition to Conditional Transfer Order. *See* Exhibit 2, *In Re. Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation,* Case No. MDL 2846 (Oct. 6, 2022, JPML). The JPML transferred that case to MDL 2846. *See id.*

### B.  This Action.

On July 28, 2022, Plaintiff Robert Blaurock commenced this action, entitled *Robert Blaurock v. Southwind Surgical Group et al.,* Case No. BU-2022-CV-000173, in the Kansas

District Court, Butler County. (Stubbs Decl. at ¶ 3). Bard was served with the Petition on August 22, 2022. (*Id.* ¶ 4). On August 29, 2022, Bard timely and properly removed this action to this Court on based on diversity of citizenship under 28 U.S.C. § 1332. (*Id.* at ¶ 5). This action falls squarely within the scope of the JPML's Transfer Order, warranting its inclusion in coordinated pretrial proceedings in the Southern District of Ohio. (*See* Transfer Order, Stubbs Decl., Ex. 1 at ¶ 2). For example, Plaintiff's Petition alleges that Plaintiff was implanted with a "Bard Mesh Perfix Plug" which was purportedly defective, and "[tore] loose; causing plaintiff internal pain and suffering." (Pet. at ¶ 3). Moreover, the Petition alleges Bard manufactured a defective product," and claims "Defendants" should have "foreseen a probability of mesh failure." (*Id*., at ¶ 3(b)(c)). The Petition further asserts that Bard was responsible for manufacturing and designing the Perfix Plug hernia repair device. *Id*. Bard provided timely notice to the JPML of this action pursuant to Rule 7.1 of the Rules of Procedure of the JPML on August 31, 2022. (Stubbs Decl. at ¶ 6). The JPML issued a Conditional Transfer Order ("CTO"), CTO-98, conditionally transferring this action to MDL 2846 on September 7, 2022. (*Id.* at ¶ 7). Plaintiff filed a motion to remand titled "Plaintiff's Objection to Defendant's Notice of Removal" on September 14, 2022. (*Id.* at ¶ 8). Plaintiff and certain Healthcare Defendants filed notices of opposition to CTO-98. (*Id.* at ¶ 9). However, the JPML set a briefing schedule, and the parties will file briefs to allow the Panel to resolve the issue of MDL transfer. (*Id.* at ¶ 10).

### III.   STATEMENT OF QUESTIONS PRESENTED

1.   **Should a stay be entered to facilitate transfer of this action to MDL 2846 for coordination with other similar cases?**

2.   **If the Court declines to stay the case, is Bard's removal procedurally proper because the Healthcare Defendants were fraudulently joined?**

## IV. ARGUMENT

### A. This Court Should Ignore The Citizenship Of The Healthcare Defendants, Because They Are Fraudulently Joined And Removal Was Proper.

If this Court denies Bard's request for a stay of proceedings, then it should also deny Plaintiff's motion to remand. To begin, Plaintiff does not dispute that he is completely diverse from Bard. *See* 28 U.S.C. § 1332(a). Although Plaintiff attempts to argue that the amount-in-controversy is not met, he admits that he seeks the amount of "$200,000 for his injuries." (ECF No. 11, Plaintiff's Motion to Remand, at 13). Likewise, Plaintiff's Petition facially alleges in excess of $75,000 as a result of his alleged injuries, and, therefore the amount-in-controversy requirement is satisfied. (Pet. ¶ 1); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S. Ct. 586, 82 L. Ed. 845 (1938) (voluntary reduction of amount demanded cannot defeat jurisdiction once removal proceedings perfected); *Lafferty v. Liberty Mut. Ins. Co.*, No. 20-2485-KHV, 2020 U.S. Dist. LEXIS 213364, at *4 (D. Kan. Nov. 16, 2020) (denying agreement where complaint "sought damages exceeding $75,000," and holding "[a]fter removal, plaintiff cannot divest this Court of jurisdiction by now claiming less than $75,000 in damages").

Plaintiff does not contest that this Court's jurisdiction cannot be thwarted by the fraudulent joinder of a non-diverse defendant, but simply argues that the Healthcare Defendants are not fraudulently joined. (ECF No. 11, Plaintiff's Motion to Remand, at 7, 13). As such, Plaintiff claims that this case should be remanded because the Healthcare Defendants are citizens of Kansas, and therefore complete diversity does not exist. (*Id.*). Specifically, Plaintiff argues that the citizenship of the Healthcare Defendants should not be ignored because they were not fraudulently joined, because they were the providers of his medical care and selected the Bard hernia repair device for Plaintiff's hernia repair surgery. (*Id.* at 7-9). Plaintiff misses the point.

- 6 -

Joinder is fraudulent when the plaintiff obviously fails to state a cause of action against a resident defendant. *Montano v. Allstate Indemnity*, No. 99-2225, 2000 U.S. App. LEXIS 6852, at *4-5 (10th Cir. April 14, 2000) (citation omitted).  A court ignores the citizenship of fraudulently joined defendants in the removal calculus. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").  The defendants who seek removal to federal court are entitled to present the facts showing the joinder to be fraudulent, and the Tenth Circuit expressly allows district courts to consider these facts. *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964).

As Bard explained at length in its Notice of Removal, it is obvious from Plaintiff's Petition that the Healthcare Defendants cannot be liable under Kansas law for the claims Plaintiff levels against them.  Plaintiff's allegations against the Healthcare Defendants claim that they "incorrectly installed" the Perfix Plug hernia repair device, causing it to "tear loose, resulting in pain and suffering."  (Pet., ¶ 3(a)).

There are essentially three reasons the Healthcare Defendants are fraudulently joined, compelling denial of Plaintiff's motion to remand.[4]  **First**, Plaintiff has not complied with the procedural requirements to allege a professional negligence claim. **Second**, the Healthcare Defendants are licensed health care providers who cannot be liable for allegedly defective products implanted at their hospitals. **Third**, Plaintiff's allegations focus on activities—the sale, marketing,

---

[4] Further, as explained in Defendants Dr. Cunningham and P.A. Dressler's Motion to Dismiss, Plaintiff's medical malpractice claim fails due to lack of personal jurisdiction, improper service of process and because it is time-barred by the applicable two-year statute of limitations in K.S.A. 60-513(a)(7).  (*See* ECF No. 12, Motion to Dismiss). Likewise, Plaintiff's claims as to Defendant Centurion fail as a matter of Kansas law because that entity had no involvement with Plaintiff's medical care and cannot be liable for his alleged injuries.  (See ECF No. 9, Motion to Dismiss).  These are additional and independent reasons Plaintiff's claims fail against these Healthcare Defendants.

design, inspection, and warnings related to a Bard hernia repair device—with which the Healthcare Defendants had no involvement, and for which they cannot be liable.

### 1. Plaintiff's Failure To Comply With Kansas's Medical Negligence Statute Establishes Fraudulent Joinder Of The Healthcare Defendants.

Plaintiff's claims for medical negligence and wrongful death cannot go forward because Plaintiff has failed to comply with Kansas pleading requirements for medical malpractice claims. In Kansas, "a plaintiff must ordinarily produce expert medical testimony," to demonstrate the standard of care and causation, "except where the lack of care or the existence of proximate cause" is apparent to the average layperson. *Parker v. Cent. Kan. Med. Ctr.*, 178 F. Supp. 2d 1205, 1214-1215 (D. Kan. 2001) (granting summary judgment on medical malpractice claim lacking expert testimony) (citation omitted); *see also Sperry v. Corizon Health*, No. 5:18-CV-03119-EFM-ADM, 2020 U.S. Dist. LEXIS 217397, at *23-24 (D. Kan. Nov. 20, 2020) (granting summary judgment in favor of defendant on medical malpractice claims where plaintiff failed to offer expert testimony in support). This demonstrates that the Healthcare Defendants were fraudulently joined, because Plaintiff cannot state a claim against them under Kansas law. Numerous courts have found fraudulent joinder of healthcare providers in cases alleging medical malpractice and product liability claims based on injuries allegedly related to implantation of a medical device, where, as here, a plaintiff has failed to fulfill the state law medical malpractice prerequisites. For example, the Fifth Circuit Court of Appeals held, *en banc*, that the addition of a Louisiana healthcare provider to a lawsuit against a medical device manufacturer constitutes improper joinder and does not defeat the court's diversity jurisdiction when the plaintiff fails to comply with pre-suit notice requirements for medical malpractice claims. *See Flagg v. Stryker Corp.*, 819 F.3d 132, 138 (5th Cir. 2016) ("It follows that, at the time of removal, Flagg was unable to "establish a cause of action against the [Medical Defendants] in state court. Thus, the district court properly discounted the

citizenship of the Medical Defendants."); *Porter v. Stryker Corp.*, No. 6:19-0265, 2019 U.S. Dist. LEXIS 135859, at *15 (W.D. La. Aug. 12, 2019) (denying motion to remand, based on fraudulent joinder where plaintiff "has not exhausted his administrative remedies by presenting these claims to a medical review panel," and ruling "the citizenship of [the healthcare provider] is to be disregarded"); *Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 644 (S.D. W.Va. 2017) (denying remand, ruling that "West Virginia Code § 55-7B-6, imposes a series of procedural prerequisites for filing a medical malpractice claim," and "[i]f this requirement is not met, the case must be dismissed"). Although Plaintiff claims he will have a medical expert to support his claims, he has failed to provide any certification, and, therefore Plaintiff has not complied with Kansas's medical malpractice statutory requirements and will be unable to state a claim against the Healthcare Defendants. As such, this Court should ignore their citizenship because they are fraudulently joined.

### 2. The Healthcare Defendants Cannot Be Liable For The Implantation Of An Allegedly Defective Medical Device.

Even if Plaintiff had provided the relevant expert certification, Plaintiff's claims against the Healthcare Defendants are essentially product liability causes of action for which the Healthcare Defendants cannot be liable, because they are not sellers of medical devices implanted at their facilities. Plaintiff alleges that the Healthcare Defendants "incorrectly installed" the Perfix Plug hernia repair device, causing it to "tear loose, resulting in pain and suffering." (Pet., ¶ 3(a)). However, the Petition further asserts that Bard was responsible for manufacturing and designing the Perfix Plug hernia repair device, that Bard "manufactured a defective product," and claims "Defendants" should have "foreseen a probability of mesh failure." (*Id.*, at ¶ 3(b)(c)). Plaintiff's fall squarely within the ambit of the Kansas Product Liability Act ("KPLA"). Under the KPLA, product liability claims include claims or actions alleging harm caused by "the manufacture,

production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product," including, but not limited to actions based on "strict liability in tort, negligence, breach of express or implied warranty, breach of, or failure to, discharge a duty to warn or instruct," . . . "or under any other substantive legal theory."  Kan. Stat. Ann. § 60-3302(c).  Therefore, despite Plaintiff's arguments to the contrary [ECF No. 11, Plaintiff's Motion to Remand at 11], his claims against Bard for purportedly manufacturing a "defective" hernia repair device are governed by the KPLA, which defines a "seller" as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption."  Kan. Stat. Ann. § 60-3302(a).  Furthermore, the KPLA specifically exempts healthcare providers from liability for defective products, providing that a "seller includes a manufacturer, wholesaler, distributor or retailer of the relevant product, ***but does not include a health care provider***, . . .  who utilizes a product in the course of rendering professional services." *Id*.  (emphasis added).  Thus, neither a physician who implants a medical device, nor a hospital who charges a fee for implantation of the product during surgery is a "seller" of the product for purposes of products liability.  As licensed health care providers, the Healthcare Defendants are, by Kansas law, not manufacturers, wholesalers, or retailers of any Bard hernia repair devices or other medical devices and are not "engaged in the business of selling" such products.  Kan. Stat. Ann. § 60-3302(a).

Therefore, Kansas law expressly precludes product liability claims against healthcare providers such as the Healthcare Defendants, and the MDL Court recently dismissed a plaintiff's claims against the healthcare facility responsible for implant of his Bard hernia repair device for exactly this reason under Florida law.  *See Leto*, 2022 U.S. Dist. LEXIS 181221, at *212.  In so doing, Judge Sargus ruled "the predominant purpose of the procedure was to repair [the plaintiff's]

hernia, "'for which the health care provider exercised its professional judgment in determining the appropriate product to utilize" and agreed that "'the selection of the [device] was integrally related to the professional services and skills of providing and facilitating the surgery.'" *Id.* (citation omitted). Thus, the healthcare provider in *Leto* was not a seller of the Bard hernia repair device, and this Court should apply the same logic here to the Healthcare Defendants, who cannot be liable under Kansas law.

Additionally, the majority of courts nationwide, have concluded similarly—physicians and hospitals cannot be liable for products liability because they are not in the business of selling products that are ultimately implanted in patients. *See, e.g.*, *Johnson v. Zimmer Spine, Inc.*, No. 2:08-CV-00672-KJD-LRL, 2008 U.S. Dist. LEXIS 144619, at *7-8 (D. Nev. Aug. 8, 2008) ("In the majority of jurisdictions, the doctrine of strict product liability generally is not applied to hospitals . . . . the essence of the relationship between a hospital and its patients does not relate essentially to any product or piece of equipment . . . but to the professional services it provides."); *Hector v. Cedars-Sinai Medical Center*, 180 Cal. App. 3d 493, 505 (1986) (hospital was not subject to strict liability for a defective pacemaker because the "patient does not enter the hospital merely to purchase a pacemaker but to obtain a course of treatment which includes implantation of a pacemaker").

The Healthcare Defendants provide professional medical services, and a product implanted in a patient is provided as part of that service. For example, in *Johnson*, plaintiff was implanted with a medical device, which he alleged was defective, but the court rejected any strict liability claim against the hospital as an "ultimate consumer" of medical devices. 2008 U.S. Dist. LEXIS 144619, at *7, *8. The Court reasoned that "the essence of the relationship between a hospital and its patients does not relate essentially to any product or piece of equipment . . . ***but to the***

*professional services it provides*." *Id.* (citations and quotations omitted) (emphasis added); *see also Cafazzo v. Central Medical Health Services, Inc.*, 542 Pa. 526, 533 (Pa. Sup. Ct. 1995) (the hospital who implanted a mandibular prosthesis was not in the business of selling device, as its use was only "incidental to [the hospital's] primary function of providing medical services"); *Lederman v. Howmedica Osteonics Corp.*, No. 8:13-cv-506-T-30AEP, 2013 U.S. Dist. LEXIS 51659 (M.D. Fl. April 10, 2013) (physician defendant who implanted a hip prosthesis was fraudulently joined because "strict liability claims are limited to manufacturers and others in the distribution chain" and thus plaintiff's product liability claims fail as a matter of law). Such is the case here. Plaintiff leaves no doubt that he relied on the Healthcare Defendants for the provision of medical services, as he "did not himself select the C.R. Bard Inc., e.g. surgical mesh, nor perform surgery upon himself." (ECF No. 11, at 7); *see also Leto*, 2022 U.S. Dist. LEXIS 181221, at \*202-203 (healthcare provider could not be liable as a seller of medical device utilized pursuant to provision of services and in accordance with provider's skill and medical judgment). Simply put, Plaintiff has no viable claims against the Healthcare Defendants, and as such they are fraudulently joined and their presence does not bar removal in this case.

  **3. The Allegations Against Bard And The Healthcare Defendants Are Irreconcilable Because The Latter Are Fraudulently Joined.**

Plaintiff's allegations against the Healthcare Defendants are wholly inconsistent with the thrust of Plaintiff's Petition. The crux of Plaintiff's Petition against the "Defendants" is that the Plaintiff's physicians "incorrectly installed" the Perfix Plug hernia repair device, causing it to "tear loose, resulting in pain and suffering." (Pet., ¶ 3(a)). However, in the same paragraph, the Petition asserts that Bard "manufactured a defective product," and claims "Defendants" should have "foreseen a probability of mesh failure." (*Id*., at ¶ 3(b)(c)). The Petition further asserts that Bard was responsible for manufacturing and designing the Perfix Plug hernia repair device. *Id*. Finally,

- 12 -

the Exhibits attached to Plaintiff's Petition demonstrate that his claims are, in fact, for product liability, not medical malpractice, because Plaintiff focuses almost entirely on Bard.[5]

Notably, however, there is no allegation that the Healthcare Defendants played any role in the design, manufacture, warnings, or marketing of the Bard hernia repair device. Rather, the Healthcare Defendants purchased the Bard hernia repair device from Bard and there is no allegation that they altered the device. Because they did not—and could not—have had access to information that was allegedly withheld from the general public in the manufacturing process, and undisputedly did not alter the device, the Healthcare Defendants cannot be held responsible for Plaintiff's alleged injuries. The thrust of Plaintiff's Petition is that Bard – not the Healthcare Defendants – was responsible for the alleged defects in the design, manufacture, warnings, marketing, and sale of the Bard hernia repair device that purportedly caused Plaintiff's injuries. By contrast, the claims against the Healthcare Defendants are based on whether they breached the duty of care in the provision of medical services to Plaintiff. (Pet., ¶¶ 2-3).

The crucial aspects of the two claims are diametrically opposed and logically inconsistent. In similar circumstances, courts have consistently found fraudulent joinder where plaintiffs have improperly joined product liability claims against pharmaceutical manufacturers with contradictory medical malpractice claims against healthcare providers. *See, e.g.*, *Baisden v. Bayer*, 275 F. Supp. 2d 759, 762-63 (S.D.W. Va. 2003) (denying remand where Petition alleged that

---

[5] For example, in a July 9, 2020 request to prison healthcare officials, Plaintiff stated "in particular, the information requested is name of the surgeon and hospital, date of procedure, follow-up exam date, and emphasis upon the type of mesh used, and manufacturer thereof." Pet., Exhibit G. Similarly, in an August 19, 2020, request for his medical records, Plaintiff stated, "*my only concern is the type of mesh, i.e. specific name and manufacture thereof. It is my best hope not to involve Hays Med. nor Dr. Cunningham as defendants*." *Id.*, Exhibit H (emphasis added). Plaintiff wrote a letter to his surgeon, Dr. Cunningham, on September 4, 2020, "in order to seek [his] assistance and cooperation .in a probable . . . Tort Claim against the mesh manufacture [sic] DAVOL." *Id.*, Exhibit L. Finally, on September 12, 2020, Plaintiff sent Bard a letter of intent to file a legal claim resulting from injuries allegedly related to defects in the Perfix Plug hernia repair device. *Id.*, Exhibit N. As such, it is apparent Plaintiff's allegations and claims focus on the purported defects in the Perfix Plug hernia repair device with which Plaintiff was implanted.

manufacturer concealed safety information regarding prescription drug, while alleging that physician was negligent in failing to warn of potential risks); *In re Baycol Prods. Litig.*, No. MDL 1431(MJD), 02-4835, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) (finding that a physician was fraudulently joined when allegations that he knew or should have known of Baycol's risks were inconsistent with allegations that the manufacturer concealed information).[6] Therefore, as in the cases above, this Court should rule that the Healthcare Defendants are fraudulently joined, and deny Plaintiff's motion to remand.

## V.     CONCLUSION

For the foregoing reasons, Defendant C. R. Bard, Inc. respectfully requests that the Court deny Plaintiff's motion for remand.

---

[6] Similarly, numerous courts have ruled that plaintiffs improperly joined malpractice claims against healthcare providers with product liability claims against prescription product manufacturers. *See, e.g.*, *In Re Stryker Rejuvenate & ABG II Hip Implant Products Liab. Litig.*, No. CIV. 13-1811 DWF/FLN, 2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013) (denying remand, severing claims against healthcare providers, and noting that joinder was prohibited even under California's liberal joinder rules) (citing cases finding improper joinder in similar circumstances). If this Court does not grant Bard's motion to stay [ECF Nos. 27-29], and does not rule that the Healthcare Defendants are fraudulently joined, it should, in the alternative, sever the medical malpractice claims and allow transfer of the product liability claims to MDL 2846. *See generally* ECF Nos. 23-25, Bard's Motion To Sever and Remand Plaintiff's Medical Malpractice Claims Against the Healthcare Defendants.

Dated this 7th day of October, 2022.

                Respectfully submitted,

                BAKER STERCHI COWDEN & RICE, LLC

                By:   */s/ Kara T. Stubbs*
                      Kara T. Stubbs    KS #15805
                      2400 Pershing Road, Suite 500
                      Kansas City, MO 64108
                      Telephone:   (816) 471-2121
                      Facsimile:   (816) 472-0288
                      stubbs@bakersterchi.com

                      **ATTORNEY FOR DEFENDANT**
                      **C. R. BARD, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, a true and correct copy of this Memorandum In Support of Bard's Opposition to Plaintiff's Motion to Remand was served through CM/ECF on all counsel or parties via the Court's filing system and/or by depositing copies of all documents in the United States mail.

    Robert D. Blaurock
    86516
    El Dorado Correctional Facility
    1737 S.E. 54 Hwy.
    P.O. Box 311
    El Dorado, KS  67042

    **PLAINTIFF**

                      */s/ Kara T. Stubbs*